**No. 20-13682-DD**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

**UNITED STATES OF AMERICA**,

Appellee,

vs.

**JIMMY RAY LIGHTSEY**

Appellant.

_____

**Appeal from the United States District Court
for the Middle District of Florida**
_____

_____

**JIMMY RAY LIGHTSEY'S CORRECTED INITIAL BRIEF**
_____

NEAL GARY ROSENSWEIG, P.A.
P.O. Box 814598
Hollywood, Florida 33081-4598
954-962-7720
Attorney for Appellant

**THIS CASE IS ENTITLED TO PREFERENCE
(CRIMINAL APPEAL)**

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

### UNITED STATES V. JIMMY RAY LIGHTSEY
### No. 20-13682-F

In compliance with F.R.A.P. 26.1 and 11th Cir. R. 26.1-1, 26.1-2(b), 26.1-2(f), and 26.1-3, the undersigned certifies that the following persons and entities have an interest in the outcome of this appeal:

Barksdale, Patricia D., United States Magistrate Judge

Clifton, Douglas James, Trial Counsel for Appellant

Corrigan, Timothy J., United States District Judge

Glober, Bonnie Ames, Assistant United States Attorney

Gonzalez, Beatriz, Assistant United States Attorney

Howard, Marcia Morales, United States District Judge

Klindt, James R., United States Magistrate Judge

Lightsey, Jimmy Ray, Defendant/Appellant

Lopez, Maria Chapa, United States Attorney

Mesrobian, David B., Assistant United States Attorney

Richardson, Monte C., United States Magistrate Judge

Rosensweig, Neal Gary, Appellate Counsel for Defendant/Appellant
    Jimmy Ray Lightsey

Skuthan, James T., Acting Federal Public Defender

## STATEMENT REGARDING ORAL ARGUMENT

The undersigned respectfully submits that oral argument is necessary to the just resolution of this appeal and will significantly enhance the decision-making process.


## CERTIFICATE OF TYPE AND SIZE

The size and style of type of this brief is Times New Roman, size 14.

# <u>TABLE OF CONTENTS</u>

**<u>Page(s)</u>**

CERTIFICATE OF INTERESTED PERSONS ........................ i-ii
STATEMENT REGARDING ORAL ARGUMENT .................. iii
CERTIFICATE OF TYPE AND SIZE ................................. iii
TABLE OF CONTENTS ................................................... iv
TABLE OF CITATIONS ................................................... v-x
STATEMENT OF SUBJECT MATTER AND APPELLATE
    JURISDICTION ........................................................... 1
STATEMENT OF THE ISSUES ......................................... 2
STATEMENT OF THE CASE ............................................ 3-7
    1.    Course of the Proceedings .................................... 3-5
    2.    Statement of the Facts ......................................... 6
    3.    Standards of Review ............................................ 6-7
SUMMARY OF THE ARGUMENT ................................... 8
ARGUMENT ................................................................... 9-25
    **I.    The District Court erred in sentencing LIGHTSEY
    as an armed career criminal, pursuant to
    18 U.S.C. § 924(c)(3)(A).** ........................................ 9-25
        **A.    LIGHTSEY'S prior Florida state court drug
        convictions are not serious drug offenses under
        the ACCA.** ....................................................... 10-15
        **B.    The Supreme Court's opinion in McNeill
        v. U.S. does not change the result reached by the
        Jackson panel.** ................................................. 15-19
        **C.    Courts must use the federal schedules in
        effect at the time of the federal offense, not at the
        time of a prior conviction.** ................................ 19-22
        **D.    LIGHTSEY's 1997 conviction for attempted
        armed robbery is not a qualifying felony under
        the ACCA.** ....................................................... 22-25
CONCLUSION ............................................................... 25
CERTIFICATE OF COMPLIANCE WITH FRAP 32(a)(7)(B) ... 25
CERTIFICATE OF SERVICE ............................................ 26

## <u>TABLE OF CITATIONS</u>

| <u>Cases</u> | <u>Page(s)</u> |
|---|---|
| Bell v. U.S., 349 U.S. 81 (1955) | 24-25 |
| Bifulco v. U.S., 44 7 U.S. 381 (1980) | 20 |
| Calder v. Bull, 3 Dall. 386 (1798) | 20-21 |
| Dorsey v. U.S., 567 U.S. 260 (2010) | 21 |
| Franqui v. State, 699 So. 2d 1312 (Fla. 1997), cert. denied, 523 U.S. 1040 (1998) | 24 |
| Guillen v. U.S. Attorney General, 910 F.3d 1174 (11th Cir. 2018) | 13, 14 |
| Johnson v. U.S., 576 U.S. 591, 596 (2015) | 20 |
| Mathis v. U.S., 579 U.S. 500 (2016) | 13 |
| McNeill v. U.S., 563 U.S. 816 (2011) | *passim* |
| Peugh v. U.S., 569 U.S. 530 (2013) | 20 |
| Rewis v. U.S., 401 U.S. 808 (1971) | 24 |
| Shepard v. U.S., 544 U.S. 13 (2005) | 13 |
| Shular v. U.S., 140 S. Ct. 779 (2020) | 11-12, 16 |
| U.S. v. Abdulaziz, 998 F.3d 519 (1st Cir. 2021) | 19 |
| U.S. v. Bautista, 989 F.3d 698 (9th Cir. 2021) | 16, 18 |
| U.S. v. Brown, 47 F.4th 147 (3d Cir. 2022) | 16, 22 |

**Cases**                                                        **Page(s)**

U.S. v. Conage, 976 F.3d 1244 (11th Cir. 2020)         6-7, 10

U.S. v. Clark, III, 46 F.4th (6th Cir. 2022) (rehearing en banc denied)  16

U.S. v. Hope, 28 F.4th 487 (4th Cir. 2022)              16, 19

U.S. v. Jackson, 36 F.4th 1294 (2022), vacated by U.S. v.
    Jackson, 2022 WL 4959314 (11th Cir. Sept. 8, 2022)      *passim*

U.S. v. Kushmaul, 984 F.3d 1359 (11th Cir. 2021)       14

U.S. v. Lanier, 520 U.S. 259 (1997)                   20

U.S. v. Perez, 46 F.4th 691 (8th Cir. 2022)          16, 19, 22

U.S. v. Taylor, 142 S.Ct. 2015 (2022)               23

U.S. v. Williams, 2022 WL 4102823 (10th Cir. Sept. 8, 2022)   16, 18, 22


**Statutory and Other Authority**              **Page(s)**

U.S. Const. Article I, Sections 9, 10              20

U.S. Const. amend. V                        20

U.S. Const. amend. XIV                    20

18 U.S.C. § 922(g), (e)                   6, 9

18 U.S.C. § 924(c)(1)(A)(I)              *passim*

18 U.S.C. § 924(c)(3)(A)                *passim*

| **Statutes, etc.** | **Page(s)** |
|---|---|
| 18 U.S.C. § 924(e)(1) | *passim* |
| 18 U.S.C. § 924(e)(2)(A) | *passim* |
| 18 U.S.C. § 924(e)(2)(B) | *passim* |
| 18 U.S.C. § 924(e)(2)(A)(ii) | *passim* |
| 18 U.S.C. § 924(d) | 3 |
| 18 U.S.C. § 1951(a) | 23 |
| 18 U.S.C. § 3231 | 1 |
| 18 U.S.C. § 3742 | 1 |
| 21 U.S.C. §  (b)(1)(D) | 9 |
| 21 U.S.C. § 841(a)(1), (b)(1)(c) | 3, 6 |
| 21 U.S.C. § 853 | 3 |
| 21 U.S.C. § 802 | 11, 12, 16, 17, 18 |
| 21 U.S.C. § 812(c), Schedule II(a)(4) | 12 |
| 28 U.S.C. § 1291 | 1 |
| 28 U.S.C. § 2461(c) | 3 |
| Controlled Substances Act, 80 Fed. Reg. 54715, 54715 | 12 |
| 21 C.F.R. § 1308.12(b)(4)(ii) (2021) | 12-13 |

| **Statutes, etc.** | **Page(s)** |
|---|---|
| § 893.13, Fla. Stat. | 2, 11, 13, 14, 15, 24 |
| § 893.03(2)(a)(4) (2017), Fla. Stat. | 13, 14 |
| 2017 Fla. Sess. Law Serv. Ch. 2017-110 (C.S.H.B. 505) | 13 |
| 11th Cir. R. 26.1-1, F.R.A.P. | i |
| Rule 26.1-2 (b), (f), F.R.A.P. | i |
| Rule 26.1-3, F.R.A.P. | i |
| Rule 32(a)(7)(B), F.R.A.P. | 25 |
| Rule 404(b), Fed. R. Evid. | 4, 5 |
| ALI, Model Penal Code § 222.1 (1980) | 23 |

## <u>STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION</u>

The district court had jurisdiction of this case pursuant to 18 U.S.C. § 3231 because the defendant was charged with an offense against the laws of the United States. The statutory basis of appeal under which this Court has jurisdiction is 28 U.S.C. § 1291 and 18 U.S.C. § 3742, which give the courts of appeals jurisdiction over all final decisions and sentences of the district courts of the United States. The Notice of Appeal was timely filed on September 26, 2020 (DE: 112), from a judgment entered on September 22, 2020 (DE: 108).

## STATEMENT OF THE ISSUES

A.    Whether the district court erred in sentencing LIGHTSEY as an armed career criminal, where his prior cocaine-related offenses under Fla. Stat. § 893.13 are not "serious drug offenses" under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(A)(ii), where the elements of those offenses encompassed conduct involving ioflupane I[123] a derivative of cocaine that is not a "controlled substance" under current federal law; and where his prior conviction for attempted armed robbery is not a crime of violence under 18 U.S.C. § 924(e)(2)(A) and (e)(2)(B), where the crime does not satisfy the elements clause of the ACCA.

`

2

## STATEMENT OF THE CASE

Appellant Jimmy Ray Lightsey was the defendant in the district court and will be referred to as "LIGHTSEY," "Appellant" or "Defendant." The appellee, The United States of America, will be referred to as "government." The record will be cited to by reference to the docket entry and page number(s) of the Record on Appeal (i.e., DE: 1-1). The Presentence Investigation Report will be referred to as "PSR."

### 1. Course of the Proceedings and Disposition Below

On November 9, 2018, an Indictment was filed in the U.S. District Court for the Middle District of Florida, charging LIGHTSEY with one count of Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. §§ 922(g) and (e) (Count 1); and one count of Possession with Intent to Distribute Cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(c) (Count 2) (Indictment, DE: 1). Forfeiture allegations were asserted against LIGHTSEY, pursuant to 18 U.S.C. § 924(d), 28 U.S.C. § 2461(c), and 21 U.S.C. § 853 (id.).

LIGHTSEY was arrested pursuant to a search warrant on November 27, 2018, made his initial appearance and was arraigned the same day (Order Granting Motion for Arrest Warrant, DE: 3; Minute Entry, DE: 5; Arrest Warrant Returned Executed, DE: 8). An Assistant Federal Public Defender was appointed to represent him on

November 28, 2018, and he was ordered detained pending trial at a hearing that day (Order of Appointment of CJA Counsel, DE: 12; Order of Detention Pending Trial, DE: 13).  An Information to Establish Prior Conviction was filed on December 17, 2018 (Information to Establish Prior Conviction, DE: 15).  On May 22, 2019, LIGHTSEY filed a motion to suppress evidence (Motion to Suppress, DE: 24), which the government responded to on June 3, 2019 (Response in Opposition, DE: 26).  The motion was heard on June 25, 2019 (Minute Entry, DE: 36), and a magistrate issued his Report and Recommendation (R&R) on July 3, 2019 (Report and Recommendation, DE:  41).  On July 22, 2019, the district court entered its order adopting the R&R and denying the motion (Order, DE: 42).  On July 25, 2019, LIGHTSEY filed his objections to the R&R out-of-time (Objection, DE: 45).  The district court overruled the objections and entered its order on July 26, 2019 (Order, DE: 49).

On October 10, 2019, the government filed a Superseding Indictment (Superseding Indictment, DE: 52), adding a charge of possession of a firearm in furtherance of the crimes charged in Count 2 (Count 3).  The government filed two Notices to Use Evidence (404(b)) on November 26, 2019 (DE: 62; DE: 63), to which LIGHTSEY filed motions in limine to exclude such evidence on December 3, 2019 (Motions in Limine, DE: 64; DE: 65).

On December 5, 2019, the government filed a Second Superseding Indictment (DE: 66), adding possession with intent to distribute crack cocaine and marijuana to Count 2. The government then filed an Information to Establish Prior Conviction (DE: 68). On January 17, 2020, the district court granted in part and denied in part, LIGHTSEY'S first motion to exclude the 404(b) evidence, and also granting in part, denying in part, and taking under advisement, LIGHTSEY's second motion to exclude such evidence (Minute Entry, DE: 88). Jury selection began on January 21, 2020 (Minute Entry, DE: 89). The district court granted in part, and denied in part, LIGHTSEY's second motion in limine as to the 404(b) evidence at a hearing held on January 22, 2020 (Minute Entry, DE: 90). Trial concluded on January 23, 2020, and the jury returned guilty verdicts on all three counts that day (Jury Verdict, DE: 97).

Sentencing took place on July 17, 2020, when LIGHTSEY was sentenced to concurrent 180-month prison terms for Counts 1 and 2; a consecutive 60-month term of imprisonment for Count 3; concurrent terms of supervised release totaling 72 months; and a special assessment of $ 300.00 (Minute Entry, DE: 107). Judgment was entered on September 21, 2020 (Judgment, DE: 108). LIGHTSEY timely filed a Notice of Appeal, which was entered on September 26, 2020 (Notice of Appeal, DE: 112). He remains incarcerated pending appeal.

5

**2. Statement of the Facts**

Defendant, Jimmy Ray LIGHTSEY, was convicted by a jury of one count of Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. §§ 922(g) and(e) 924 (Count 1); and one count of Possession with Intent to Distribute Cocaine, Crack Cocaine and Marijuana in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(c) (Count 2), and possession of a firearm in furtherance of the crimes charged in Count 2 (Count 3) (Judgment in a Criminal Case, DE: 108-1).

The U.S. Probation Office determined that he was subject to enhanced penalties as an Armed Career Criminal, based on a prior conviction for a violent felony and three prior convictions for serious drug offenses under Florida law (PSR, DE: 101-9-10). LIGHTSEY objected to the armed career criminal determination and reiterated his objections at sentencing (Addendum to the PSR, DE: 101-26-27; Trans. of Sentencing, DE: 128-5). The district court denied the objections and sentenced LIGHTSEY as an armed career offender, to concurrent sentences of 15 years as to Counts 1 and 2, and to a consecutive sentence of 5 years as to Count 3 (Trans. of Sentencing, DE: 128-27). This appeal followed.

**3. Standards of Review**

A.    We review de novo whether a state conviction qualifies as a "serious drug

offense" for ACCA purposes. <u>U.S. v. Conage</u>, 976 F.3d 1244, 1249 (11th Cir. 2020).

## SUMMARY OF THE ARGUMENT

Appellant, JIMMY RAY LIGHTSEY, was convicted by a jury of one count of Possession of a Firearm by a Convicted Felon, one count of Possession with Intent to Distribute Cocaine, Cocaine Base and Marijuana, and one count of Possession of a Firearm in Furtherance of a Drug Trafficking Crime.  He was sentenced as an armed career offender based on a prior felony conviction for attempted armed robbery and two prior felony drug offenses, pursuant to the Armed Career Criminal Act ("ACCA").  Neither LIGHTSEY's prior drug convictions nor his prior attempted armed robbery conviction qualify as ACCA predicate offenses.

## ARGUMENT

## I.    The District Court erred in sentencing LIGHTSEY as an armed career criminal, pursuant to 18 U.S.C. § 924(c)(3)(A).

LIGHTSEY was convicted by a jury of one count of Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. § 922(g) and 18 U.S.C. § 924 (e) (Count 1); one count of Possession with Intent to Distribute Cocaine, Cocaine Base and Marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(c) and (b)(1)(D) (Count 2); and one count of Possession of a Firearm in Furtherance of a Drug Trafficking Crime 18 U.S.C. § 924(c)(1)(A)(I).  The Armed Career Criminal Act (ACCA) increases the sentence of a felon in unlawful possession of a firearm if that person has at least three prior convictions for a "violent felony," 18 U.S.C. § 924(e)(2)(B), or a "serious drug offense," 18 U.S.C. § 924(e)(2)(A), or both, 18 U.S.C. § 924(e)(1).

The U.S. Probation Office determined Lightsey to have sustained a 1997 felony conviction for attempted armed robbery with a weapon, a 2000 felony conviction for sale of cocaine, a 2007 felony conviction for possession of cocaine, and a 2009 felony conviction for sale or delivery of cocaine. (PSR, DE: 101-5, 12-16).  He was sentenced to concurrent 180-month prison terms for Counts 1 and 2 and a consecutive 60-month term of imprisonment for Count 3 18 U.S.C. § 924(c)(3)(A) (Judgment, DE: 108-2).  The district court erred in sentencing LIGHTSEY as an armed career

criminal, as none of the prior felony convictions are qualifying offenses for purposes of the ACCA.

### A.    LIGHTSEY'S prior Florida state court drug convictions are not serious drug offenses under the ACCA.

We review de novo whether a state conviction qualifies as a "serious drug offense" for ACCA purposes. U.S. v. Conage, 976 F.3d 1244, 1249 (11th Cir. 2020). "When conducting our review, we are "bound by federal law when we interpret terms in the ACCA" and "bound by state law when we interpret elements of state-law crimes." Id. (internal quotation marks omitted). Making this determination requires that courts employ the employ the "categorical approach." Conage, 976 F.3d at 1250. Under that approach, we look to the state offense of which the defendant was previously convicted and identify the elements of that crime. Id. The categorical approach requires that we do not consider the individual facts underlying the defendant's prior conviction—just the elements. Id. We then compare these elements of the state offense with the components of ACCA's definition of "serious drug offense." See id. A conviction qualifies as a "serious drug offense" only if the state statute under which the defendant was convicted defines the offense as least as narrowly as ACCA's definition of "serious drug offense." Id.

This determination in turn requires three steps. "First, we identify the criteria

10

that ACCA uses to define a "serious drug offense" under 18 U.S.C. § 924(e)(2)(A)(ii). <u>U.S. v. Jackson</u>, 36 F.4th 1294, 1299 (2022), <u>vacated by</u> <u>U.S. v. Jackson</u>, 2022 WL 4959314 (11th Cir. Sept. 8, 2022). "Second, we analyze the outer bounds of the elements that would have satisfied Fla. Stat. § 893.13's requirements for a cocaine-related conviction at the time of each of Jackson's convictions." <u>Jackson</u>, 36 F. 4th at 1299. "And third, we compare the results of the first two steps to see whether § 893.13's "elements 'necessarily entail one of the types of conduct'" set forth in ACCA's definition of "serious drug offense." <u>Id.</u> (quoting <u>Shular v. U.S.</u>, 140 S. Ct. 779, 784 (2020) (emphasis and citation omitted). "If so, we count the conviction as a "serious drug offense." But if not, the conviction does not qualify as a 'serious drug offense.'" <u>Id.</u>

The ACCA defines a "serious drug offense" as an offense under State law "involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. § 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii).

The Supreme Court has already clarified the meaning of the first element. In <u>Shular</u>, the Court explained that "involving ... distributing, or possessing with intent to ... distribute" refers to "conduct" that the definition "necessarily require[s]." 140

11

S. Ct. at 785 (alteration omitted). And the third element—concerning the potential penalty for the offense of the prior conviction—is self-explanatory.  That leaves us with the second element: "a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. § 802))." 18 U.S.C. § 924(e)(2)(A)(ii). Section 102, in turn, defines a "controlled substance" to "mean[ ] a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of this subchapter." 21 U.S.C. § 802(6). On September 26, 2017 (and currently), Schedule II included the following cocaine-related substances: "cocaine, its salts, optical and geometric isomers, and salts of isomers; ecgonine, its derivatives, their salts, isomers, and salts of isomers; or any compound, mixture, or preparation which contains any quantity of any of the substances referred to in this paragraph." 21 U.S.C. § 812(c), Schedule II(a)(4). But it did not include ioflupane.

At the time of LIGHTSEY's three cocaine convictions, in 2000, 2007, and 2009, both the federal and Florida Schedule II included ioflupane. Ioflupane was "by definition, a schedule II controlled substance because it is derived from cocaine via ecgonine, both of which are schedule II controlled substances." Schedules of Controlled Substances: Removal of [123 I] Ioflupane from Schedule II of the Controlled Substances Act, 80 Fed. Reg. 54715, 54715.  However, it was removed from Schedule II in September of 2015 because it had beneficial uses. See 21 C.F.R.

12

§ 1308.12(b)(4)(ii) (2021) ("except[ing]" ioflupane from current Schedule II). So, when LIGHTSEY illegally possessed a firearm on June 24, 2018, ioflupane was not listed in the federal Schedule II. Florida followed suit in 2017 when it removed ioflupane from its Schedule II list. 2017 Fla. Sess. Law Serv. Ch. 2017-110 (C.S.H.B. 505); see also Fla. Stat. § 893.03(2)(a)(4) (2017).

"When we examine prior state convictions under the categorical approach, we analyze "the version of state law that the defendant was actually convicted of violating, at the time of conviction." Jackson, 36 F4th at 1302 (quoting McNeill v. U.S., 563 U.S. 816, 821 (2011)). Fla. Stat. § 893.13, categorically criminalized activity involving ioflupane at the times of LIGHTSEY's prior convictions. Jackson, 36 F4th at 1303. When a statute lists alternative "elements," rather than alternative "means" of satisfying an element, the statute is "divisible." Id. at 1302 (quoting Mathis v. U.S., 579 U.S. 500, 504–05 (2016). In that case, the "modified categorical approach" permits a court to consult a limited class of documents for the sole purpose of ascertaining the elements on which the defendant was actually convicted. These documents include a plea agreement, the transcript of a plea colloquy, the charging document, jury instructions, or a "comparable judicial record of this information." Id. (quoting Shepard v. U.S., 544 U.S. 13, 26 (2005)). In Guillen v. U.S. Attorney General, 910 F.3d 1174 (11th Cir. 2018), this Court held that, under Florida law, each

category of substance separately enumerated in Florida's Controlled Substance Schedules was an alternative controlled-substance "element." Id. at 1182–83. Even if use of the modified categorical approach were permitted, there is nothing in the judgments submitted as evidence in the trial court for the 2000, 2007, and 2009 offenses that mention anything other than "cocaine." (Government's Exhibit, DE: 94-22; Government's Exhibit, DE: 107-2).

When LIGHTSEY was convicted of his prior cocaine convictions, § 893.03(2)(a)(4) included ioflupane in its formulations within the category of cocaine. Jackson, 36 F4th at 1303. Because § 893.03(2)(a)(4) identified "means," not "elements," in 2000, 2007 and 2009, when LIGHTSEY was convicted under § 893.13(a)(1), a cocaine-related conviction could have been based on any one of these several formulations, including sale of or possession with intent to distribute Ioflupane. Comparing this fact to the ACCA at the time of his instant felon-in-possession offense, "we must presume that [LIGHTSEY]'s cocaine-related convictions "rested upon nothing more than the least of the acts criminalized or the least culpable conduct." U.S. v. Kushmaul, 984 F.3d 1359, 1364 (11th Cir. 2021) (internal quotation marks omitted). "Here, that means we must assume that [LIGHTSEY] sold and possessed with intent to sell ioflupane. Ioflupane was not a controlled substance when he committed the instant offenses in 2018. Therefore, "at

the times of [LIGHTSEY]'s prior cocaine-related state convictions, Fla. Stat. § 893.13(a)(1)'s controlled-substance element was broader for cocaine-related offenses than ACCA's 'serious drug offense' definition," and therefore, that LIGHTSEY's 2000, 2007 and 2009 cocaine-related convictions do not qualify as "serious drug offense[s]."  36 F4th at 1303-04.

**B.    The Supreme Court's opinion in McNeill v. U.S. does not change the result reached by the Jackson panel.**

In vacating this Court's panel opinion in Jackson, the panel ordered the parties to file supplemental briefs "addressing the specific question of whether McNeill's past-tense interpretation of 'serious drug offense' requires that we assess whether a prior state conviction qualifies as a "serious drug offense" under federal law at the time of the state conviction rather than at the time of the federal offense."  2022 WL 4959314 at *1.  In addition to the panel's unanimous opinion, the First, Third, Fourth, Eighth, Ninth, and Tenth Circuits have also unanimously held that, when analyzing whether a prior state conviction is a "serious drug offense" or a "controlled substance offense," a federal court must compare its elements to the federal drug schedules in effect at the time of the federal offense—not at the time of the prior.  Seven circuits—including this panel—have explained in unanimous published opinions that McNeill has no bearing on the timing question here, rejecting the government's

15

contrary position. These opinions were all unanimous on that point. See U.S. v. Williams, 2022 WL 4102823, at *13 & n.12 (10th Cir. Sept. 8, 2022); U.S. v. Brown, 47 F.4th 147, 154–55 (3d Cir. 2022); U.S. v. Perez, 46 F.4th 691, 699–700 (8th Cir. 2022); U.S. v. Hope, 28 F.4th 487, 504–05 (4th Cir. 2022); U.S. v. Abdulaziz, 998 F.3d 519, 525–27 (1st Cir. 2021); U.S. v. Bautista, 989 F.3d 698, 703 (9th Cir. 2021). Only the Sixth Circuit has reached a contrary result. U.S. v. Clark, III, 46 F.4th (6th Cir. 2022) (rehearing en banc denied).

The ACCA defines a "serious drug offense" as "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii). In Shular v. U.S., 140 S. Ct. 779 (2020), the Supreme Court confirmed that the "categorical approach" applies to this definition. That means the federal "court must look only to the state offense's elements, not the facts of the case or labels pinned to the state conviction." Id. at 784. And the court must then "ask whether the state offense's elements necessarily entail one of the types of conduct identified in § 924(e)(2)(A)(ii)." Id. at 784–85 (quotation and emphasis omitted). If not, then the state offense is overbroad and does not satisfy the definition.

The "serious drug offense" definition in § 924(e)(2)(A)(ii) thus requires a two-step analysis: step one is controlled by state law; step two is controlled by federal law. Step one requires the federal court to ascertain the elements of the state offense (and the least culpable conduct encompassed by them). To do so, the federal court must look to state law that was in effect at the time of the prior state conviction. After all, that backwards-looking analysis is the only way to identify the elements of the state offense for which the defendant was actually convicted.

With those elements in hand, step two then requires the federal court to compare the state-law offense elements against the criteria in § 924(e)(2)(A)(ii). That is a question of federal—not state—law. And the prior state offense will satisfy that federal definition only if its elements necessarily involve "manufacturing, distributing, or possessing with intent" to do so "a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802))." The parenthetical expressly incorporates the federal drug schedules into the ACCA's definition. That brings us to the dispositive question in this case. When comparing the offense elements against the federal drug schedules, does the court look to the federal schedules in effect at the time of the instant federal firearm offense?  Or does it look to the schedules in effect at the time of the prior state drug conviction? As explained below, the Supreme Court's decision in <u>McNeill</u> has nothing to say about that timing

17

question.

In <u>McNeill v. U.S.</u>, 563 U.S. 816 (2011), the Supreme Court was called upon to determine "how a federal court should determine the maximum sentence for a prior state drug offense for ACCA purposes." <u>Id.</u> at 817-18, The Court held that "the 'maximum term of imprisonment' for a defendant's prior state drug offense is the maximum sentence applicable to his offense when he was convicted of it." <u>Id.</u> at 818. The Court quoted the definition of a "serious drug offense" in § 924(e)(2)(A)(ii) for the requirement that a prior drug offender be subject to a ten-year maximum sentence but completely omitted the additional requirement in the subsection that the controlled substance be one as defined in section 102 of the Controlled Substances Act, 21 U.S.C. § 802. <u>Id.</u> The issue before the Court did not include, as is present here, whether McNeill's prior drug offenses could have been for ioflupane, because ioflupane was not removed from Schedule II of the Controlled Substances Act until 2015. Because the Court never considered the issue presented here, <u>McNeill</u> has no bearing on, and is easily distinguishable from the analysis required in the instant case. <u>See</u> <u>U.S. v. Williams</u>, 2022 WL 4102823 (10th Cir. Sept. 8, 2022) ("<u>McNeill</u> has no bearing on what version of federal law serves as the point of comparison for the prior state offense, which is the question here"); <u>U.S. v. Bautista</u>, 989 F.3d 698, 703 (9th Cir. 2021) ("<u>McNeill</u> nowhere implies that the court must ignore current federal law

and turn to a superseded version of the United States Code."); U.S. v. Abdulaziz, 998 F.3d 519, 525-527 (1st Cir. 2021 ("[T]he government's reliance on McNeill here is misplaced"); U.S. v. Hope, 28 F.4th 487, 504-05 ("McNeill does not prohibit us from considering changes to federal law for the purposes of the ACCA"); Jackson, 36 F.4th at 1306 ("McNeill's reasoning, which relied on the language 'previous convictions,' has no application here."); U.S. v. Perez, 46 F.4th 691, 699-700 (8th Cir. 2022) ("[T]he reasoning in McNeill regarding state law does not translate to this issue concerning the federal drug statute").

### C.    Courts must use the federal schedules in effect at the time of the federal offense, not at the time of a prior conviction.

Without McNeill, there is no basis for requiring courts to consult superseded federal schedules that were in effect at the time of the prior state conviction. To the contrary, constitutional principles of fair notice, the statutory text, and common sense all require courts to use the federal drug schedules in effect at the time of the federal firearm offense.

As the Jackson panel put it:

We hold that due-process fair-notice considerations require [courts] to apply the version of the Controlled Substance Act Schedules in place when the defendant committed the federal firearm-possession offense for which he is being sentenced.

***

19

> That way, [a defendant] ha[s] notice at the time of his firearm-possession offense not only that his conduct violated federal law, but also of his potential minimum and maximum penalty for his violation and whether his prior felony convictions could affect those penalties"

Jackson, 36 F.4th at 1297, 1300.  Fair notice of the criminal law is enshrined in the Constitution. As relevant here, there are at least "three related manifestations of the fair warning requirement." U.S. v. Lanier, 520 U.S. 259, 266 (1997). First, the Due Process Clause of the Fifth and Fourteenth Amendments prohibits the enforcement of a criminal law that is "so vague that men of common intelligence must necessarily guess at its meaning." Id. (quotation omitted). Second, those same Clauses, along with the Constitution's separation of powers-undergird the rule of lenity, "ensur[ing] fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered." Id. And, third, the Ex Post Facto Clauses in Article I, Sections 9 and 10, "bar legislatures from making substantive criminal offenses retroactive." Id. at 266-67.  These fair-notice requirements "apply not only to statutes defining elements of crimes, but also to statutes fixing sentences." Johnson v. U.S., 576 U.S. 591, 596 (2015) (vagueness); see Bifulco v. U.S., 44 7 U.S. 381, 387 (1980) (lenity "applies not only to interpretation of the substantive ambit of criminal prohibitions, but also to the penalties they impose"); Peugh v. U.S., 569 U.S. 530, 532-33, 538 (2013) (ex post facto laws "change[ ] the punishment, and inflict[ ] a

greater punishment, than the law annexed to the crime, when committed") (quoting Calder v. Bull, 3 Dall. 386, 390 (1798) (brackets omitted)). Fair-notice principles "dr[o]ve" the panel's decision here-and rightfully so. Jackson, 36 F.4th at 1297, 1300. Underlying the panel's reasoning was this critical fact: a defendant incurs the ACCA's penalties only when he "becomes subject to them, i.e., commits the underlying conduct that makes the offender liable." Dorsey v. U.S., 567 U.S. 260, 272 (2010). And so a defendant becomes subject to the ACCA only when he commits the federal firearm offense-not when he commits an earlier state offense that may at some point serve as an ACCA predicate.  Think about it from the defendant's perspective. When a defendant is convicted of a drug offense in state court, he has little reason to think about the consequences that the conviction may have on some entirely hypothetical future federal crime that he has not yet committed (and likely has no intention of ever committing).  When LIGHTSEY was convicted of Florida cocaine-related offenses in 2000, 2007, and 2009, he had no reason to think about how that conviction might affect a future sentence for a federal gun offense that he would not commit until 2018. At those times, he had no reason to analyze federal drug schedules that were in effect. The upshot is that, to ensure fair notice to defendants, a federal court must use the federal schedules that are in effect at the time the defendant committed the federal firearm offense. That is the time the defendant actually incurs the ACCA's penalties.

21

And so that is the time when those penalties may actually deter him from violating federal law.  Conversely, using the schedules that were in effect at the time of a prior state conviction would deprive defendants of fair notice. At that time, they have not actually incurred any penalties under the ACCA.  And so they have no reason to scour the federal drug schedules with an eye towards their sentencing exposure for some future federal crime that they not yet committed and have no intention of ever committing.  Agreeing that courts must use the federal schedules in effect at the time the federal offense is committed, a unanimous Third Circuit has endorsed this panel's fair-notice reasoning. It said: "As the Eleventh Circuit sensibly reasoned, this rule gives a defendant notice 'not only that his conduct violated federal law, but also of his potential minimum and maximum penalty for his violation and whether his prior felony convictions could affect those penalties.'" Brown, 47 F.4th at 153 (quoting Jackson, 36 F.4th at 1300). The Eighth Circuit (granting relief on plain error review) and the Tenth Circuit have also found the panel's notice reasoning persuasive. See Williams, 2022 WL 4102823, at *13; Perez, 46 F.4th at 699-701. The panel's reasoning is persuasive, and the panel should reaffirm it.


     **D.**    **LIGHTSEY's 1997 conviction for attempted armed robbery is not a qualifying felony under the ACCA**.

The elements clause of the ACCA, 18 U.S.C. § 924(c)(3)(A), defines a crime of violence as one that "has as an element the use, attempted use, or threatened use of physical force." In <u>U.S. v. Taylor</u>, 142 S.Ct. 2015, the Supreme Court of the United States held that attempted Hobbs Act Robbery, 18 U.S.C. § 1951(a), did not qualify as a crime of violence under the elements clause of the ACCA, because the government was not required to prove that Taylor used, attempted, or threatened to use force. The Court wrote:

> Whatever one might say about completed Hobbs Act robbery, attempted Hobbs Act robbery does not satisfy the elements clause. Yes, to secure a conviction the government must show an intention to take property by force or threat, along with a substantial step toward achieving that object. But an intention is just that, no more. And whatever a substantial step requires, it does not require the government to prove that the defendant used, attempted to use, or even threatened to use force against another person or his property. As the Model Penal Code explains with respect to the Hobbs Act's common-law robbery analogue, "there will be cases, appropriately reached by a charge of attempted robbery, where the actor does not actually harm anyone or even threaten harm." ALI, Model Penal Code § 222.1, p. 114 (1980). "If, for example, the defendant is apprehended before he reaches his robbery victim and thus before he has actually engaged in threatening conduct, proof of his purpose to engage in such conduct" can "justify a conviction of attempted robbery" so long as his intention and some other substantial step are present. <u>Id.</u>, at 115.

142 S.Ct. at 2020-21.

In 1997, when LIGHTSEY was convicted of attempted armed robbery, § 893.13(1) (1995) defined robbery as "the taking of money or other property which

23

may be the subject of larceny from the person or custody of another, with intent to either permanently or temporarily deprive the person or the owner of the money or other property, when in the course of the taking there is the use of force, violence, assault, or putting in fear." "In order to prove attempted armed robbery, the State must show: (1) the formation of an intent to commit the crime of robbery; (2) the commission of some physical act in furtherance of the robbery; and (3) the use of a firearm." Franqui v. State, 699 So. 2d 1312, 1317 (Fla. 1997), cert. denied, 523 U.S. 1040 (1998). The statutory definition of robbery and the Florida Supreme Court's pronouncement of the elements are clearly at odds. The statutory definition of robbery requires proof of "the use of force, violence, assault, or putting in fear." § 892.13(1), Fla. Stat. The elements of attempted armed robbery enunciated by the Florida Supreme Court require proof of the use of a firearm. It is possible, turning to the example provided in Taylor, that a defendant may have formed the intent to commit armed robbery, taken a substantial step toward its commission, and even carried a weapon, but was apprehended before he reached the victim. Therefore, Florida attempted armed robbery also fails to satisfy the elements clause of the ACCA.

Here, too, the rule of lenity should be applied. "[a]mbiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." See Rewis v. U.S.,

401 U.S. 808, 812 (1971) ((citing <u>Bell v. U.S.</u>, 349 U.S. 81, 83 (1955)).  It is impossible to know how the Florida Supreme Court came to include in the elements of attempted armed robbery the use of a firearm, when the statutory definition of robbery makes no mention of firearms.  It is also impossible to know whether "use of a firearm" means discharging a firearm, brandishing it, or merely possessing it.  The rule of lenity thus requires that this ambiguity be resolved in LIGHTSEY's favor.

Because none of LIGHTSEY's prior felonies qualify as either serious drug offenses or crimes of violence under the ACCA, he was impermissibly sentenced under the ACCA.

## CONCLUSION

Based upon the foregoing, the Court should vacate Mr. LIGHTSEY's sentence and remand for re-sentencing without the ACCA enhancement.

by: /s/ Neal Gary Rosensweig

## CERTIFICATE OF COMPLIANCE WITH FRAP 32(a)(7)(B)

This brief complies with the type-volume limitation contained in Rule 32(a)(7)(B), Federal Rules of Appellate Procedure, in that it contains 5,336 words.

by: /s/ Neal Gary Rosensweig

25

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing was filed via the CM/ECF system and served via CM/ECF on the Office of the United States Attorney, 300 N. Hogan St., Jacksonville, FL 32202,  and that one true and correct copy of the foregoing has been sent by mail to:  Jimmy Ray Lightsey, USP ATLANTA, U.S. PENITENTIARY, P.O. BOX 150160, ATLANTA, GA  30315, this 9th day of December, 2022.

Respectfully submitted,

NEAL GARY ROSENSWEIG, P.A.
Attorney for Appellant
P.O. Box 814598
Hollywood, Florida 33081-4598
954-962-7720


by: /s/ Neal Gary Rosensweig

NEAL GARY ROSENSWEIG, ESQ.
Florida Bar No. 0100773

26