[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-13682

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JIMMY RAY LIGHTSEY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 3:18-cr-209-MMH-MCR

_____

Before WILSON, LUCK, and LAGOA, Circuit Judges.

LAGOA, Circuit Judge:

Following a jury trial, Jimmy Ray Lightsey was convicted of possessing a firearm as a felon in violation of 18 U.S.C. §§ 922(g) and 924(e); knowingly possessing with intent to distribute cocaine, cocaine base, and marijuana in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), and (b)(1)(D); and possessing a firearm in furtherance of a drug-trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i). At his sentencing, the district court determined that Lightsey was an armed career criminal within the meaning of the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1) ("ACCA"), and enhanced Lightsey's sentence pursuant to that statute. Lightsey now appeals his sentence of 240 months' imprisonment, contending that the district court plainly erred in finding that his prior convictions qualified as predicate offenses under ACCA. After careful consideration of the parties' arguments and with the benefit of oral argument, we affirm.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### A. Lightsey's Criminal Conduct

Lightsey was charged in a second superseding indictment with possessing a firearm as a felon in violation of 18 U.S.C. §§ 922(g) and 924(e) (Count One); knowingly possessing with intent to distribute cocaine, cocaine base, and marijuana in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), and (b)(1)(D) (Count Two); and possessing a firearm in furtherance of a drug-trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count Three). As to Count Two, the government filed an Information to Establish Prior

Convictions pursuant to 21 U.S.C. § 851, attaching documents establishing that Lightsey had, in relevant part, a 2000 Florida conviction for sale of cocaine and a 2009 Florida conviction for sale or delivery of cocaine, both in violation of Florida Statute § 893.13(1)(a). Lightsey proceeded to trial, and the jury found him guilty of all three counts.

## B. Lightsey's Sentencing

Before sentencing, a probation officer prepared a presentence investigation report ("PSI") that reported the following facts. On June 24, 2018, a Jacksonville Sheriff's Office detective saw Lightsey driving with improperly tinted windows, then watched him park and get out of the car to gather with a group of people hanging out in a vacant lot. The detective recognized Lightsey from prior interactions, ran his name through a computer database, and discovered that Lightsey's license was suspended. The detective waited for backup to arrive and then arrested Lightsey. During the arrest, officers saw a large bag of marijuana in plain view on the center console of Lightsey's car and a loaded handgun (which turned out to be stolen) in plain view on the driver's side floorboard. They then searched the car and found 4 more bags of marijuana in the center console—together weighing a total of 46.4 grams. The officers also found in another compartment a pill bottle containing 3.3 grams of cocaine and 0.7 grams of cocaine base packaged for sale. Prior to this arrest, Lightsey had been convicted of multiple felonies, including the 2000 and 2009 Florida

convictions for sale or delivery of cocaine and a 1997 conviction for attempted armed robbery.

The PSI grouped Counts One and Two pursuant to U.S.S.G. § 3D1.2(c) and applied the higher offense level applicable to Count One, as required by § 3D1.3(a). The statute governing Count Three required a sixty-month consecutive sentence and thus, pursuant to § 3D1.1(b)(1), Count Three was not grouped with the others. As to Counts One and Two, the probation officer calculated a base offense level of 20 under § 2K2.1(a)(4)(A) because Lightsey violated § 922(g)(1) after sustaining a felony conviction for a controlled substance offense. The PSI then applied a two-level enhancement under § 2K2.1(b)(4)(A) because the firearm Lightsey possessed was stolen. Lightsey's adjusted offense level was, therefore, 22. But the PSI then increased the offense level to 33 because (a) Lightsey was charged with possession of a firearm by a felon in Count One and (b) he had at least three prior convictions on different occasions for violent felonies or serious drug offenses, rendering him an "armed career criminal" under § 4B1.4(b)(3)(B). Specifically, the PSI cited Lightsey's 1997 Florida conviction for attempted armed robbery, 2000 Florida conviction for sale of cocaine, and 2009 Florida conviction for sale or delivery of cocaine as predicate offenses for the armed career criminal enhancement. Lightsey did not receive any reduction for acceptance of responsibility, resulting in a total offense level of 33. The probation officer calculated a criminal history score of six, which would typically yield a criminal history category of III. But because of Lightsey's status as an armed career

criminal, the PSI increased his criminal history category to IV pursuant to § 4B1.4(c)(3).

Under § 924(e), Lightsey was subject to a statutory term of imprisonment of fifteen years to life for Count One.  As for Count Two, the statutory maximum term was thirty years.  His guideline range on Counts One and Two was 188 to 235 months.  On Count Three, Lightsey faced a mandatory minimum of five years and a maximum of life, to run consecutively to any other counts.

The PSI also summarized Lightsey's personal history and characteristics.  In particular, the PSI reported that Lightsey's childhood was unstable as he had been raised in foster care and frequently ran away due to physical abuse.  He was homeless at times and his only male role models were other homeless men.  He was in the juvenile justice system from age thirteen until he was sentenced to prison as an adult at age sixteen.  Lightsey has three children, each with a different woman, but he does not have contact with any of them.  Lightsey reported that he has suffered from bipolar disorder and schizophrenia since childhood, and that he received some mental health counseling and medication between 2014 and 2016.  Medical records showed that Lightsey was committed under the Baker Act twice, in July 2014 and October 2016, and that he had attempted suicide at least once in 2016.  Nassau County Jail records reflected that Lightsey denied any history of mental health problems during his evaluation there, and he was not prescribed any psychotropic medication during his incarceration.  Lightsey reported some illegal drug use in his past and a urinalysis

performed at the time of his initial appearance in November 2018 had negative results. Lightsey dropped out of high school in 11th grade and does not have a GED. He had some scattered employment history as a machine operator, truck driver, warehouse worker, and landscaper. Of all this, the PSI concluded that Lightsey's personal history and characteristics may warrant a sentence outside of the advisory guideline system but did not identify any basis for departure from the guideline range.

Lightsey objected to the PSI, arguing that he was improperly designated as an armed career criminal because (a) his 1997 conviction for attempted armed robbery was not a violent felony and (b) his 2000 and 2009 drug convictions were not "serious drug offenses" as defined in ACCA. The probation officer responded that in *United States v. Fritts*, 841 F.3d 937 (11th Cir. 2016), this Court held that Florida armed robbery under Florida Statute § 812.13 categorically qualified as a "violent felony" under ACCA.[1] Likewise, the probation officer stated that *Shular v. United States*, 589 U.S. 154 (2020), held that sale of cocaine and sale or delivery of cocaine under Florida Statute § 893.13(1)(a) are both "serious drug offenses" under ACCA. Lightsey also filed a sentencing memorandum with mitigating arguments based on his childhood poverty, neglect, and

---

[1] The probation officer did not address whether *Fritts* extends to the inchoate crime of "attempt." At the time the PSI was written, however, it was the law in our Circuit that "an attempt to commit a violent felony under the ACCA is also a violent felony." *United States v. St. Hubert* 909 F.3d 335, 352 (11th Cir. 2018), *abrogated by United States v. Taylor*, 596 U.S. 845 (2022).

abuse and the mental health struggles that precipitated his criminal offenses.

At sentencing, Lightsey renewed his objection to the ACCA enhancement "for the record," but he conceded that "[t]he case law does not support [his] objections." He argued that his 1997 conviction for attempted armed robbery was not a qualifying offense for three reasons: it was stale, attempt crimes did not qualify as violent felonies, and it was improper to consider because it was a juvenile conviction. He also maintained that his 2000 Florida cocaine-related conviction was too stale to count as a predicate offense. Lightsey again conceded that he had "no case law to support these objections." The district court disagreed with that characterization, explaining that "it's slightly different than there being no case law to support the objections. The current state of the law is that those objections are all foreclosed." Lightsey agreed. The government, for its part, seconded the probation officer's view that *Shular* held that Lightsey's specific Florida drug convictions were "serious drug offenses" under ACCA. The government added that *Stokeling v. United States*, 586 U.S. 73 (2019), held that Florida armed robbery—the completed crime that Lightsey was convicted of attempting—was a predicate felony for the ACCA enhancement. The government also noted that Lightsey had been adjudicated as an adult in the 1997 case but explained that, even if he were adjudicated as a juvenile, *United States v. Burge*, 407 F.3d 1183 (11th Cir. 2005), concluded that juvenile offenses may qualify as predicate convictions under ACCA. The district court added that our Circuit's precedent provided that "an attempt to commit a crime of

violence is[,] in itself[,] a crime of violence, and so it counts in the same way as the actual accomplishment of the offense." With that, the district court concluded that, "because I believe that those arguments are foreclosed . . . they are noted and preserved for the record in case the law changes, but for current purposes, I will overrule the objection."

The district court then accepted the facts as recounted in the PSI and adopted its sentencing calculations: an offense level of 33, a criminal history category of IV, a guideline range of 188 to 235 months' imprisonment for Counts One and Two, a 60-month mandatory consecutive sentence for Count Three, and terms of supervised release on each Count. Both Lightsey and the government agreed with the district court's recitation of the guidelines.

Regarding the ACCA predicates, the government introduced into evidence the certified copies of Lightsey's prior drug and attempted robbery convictions. Lightsey admitted that each of these convictions had been entered against him and acknowledged that he would not later be able to challenge the existence of those convictions, though he could still appeal whether they qualified as ACCA predicates.

The government requested a sentence at the low end of the guideline range on Counts One and Two, followed by the five-year mandatory minimum on Count Three. The government explained that its position balanced the need to deter Lightsey and protect the public from future crimes against the mitigating effect of Lightsey's difficult life circumstances. Lightsey reiterated the mitigating

arguments from his sentencing memorandum.  He focused on his childhood abuse and instability as well as his juvenile drug use.  As for his prior convictions he pointed out that two came from his teenage years, and that, with respect to the prior drug convictions, they concerned a total of $70 worth of crack cocaine.  Lightsey also stressed that he had "no prior other violence in his past" and pointed out that, in this case, he had very small amounts of cocaine and crack, and a much larger amount of marijuana, implying that the latter is less serious.  Lightsey's counsel expressed frustration and acceptance of the reality that "there's nothing I can say that will get anything lower than 20 years here," and asked that the district court impose that minimum sentence.

Lightsey addressed the district court himself, conceding that he "made some very bad mistakes" but expressing despair over his challenging childhood and his need for psychiatric medication, and insisting that he did not deserve twenty years in prison.  While he admitted and took responsibility for his drug crimes, Lightsey disputed the validity of his firearm prosecution.  The district court then sentenced Lightsey to 240 months' imprisonment—consisting of concurrent terms of 180 months' imprisonment on each of Counts One and Two and a consecutive term of sixty months' imprisonment on Count Three—and six years of supervised release.  In doing so, the district court acknowledged that it "ha[d] no authority to impose anything less than 15 years as to Count One, and ha[d] no authority to impose less than 5 years consecutive as to Count Three."

This appeal timely followed.[2]

## II.    ANALYSIS

Lightsey raises two issues on appeal, both of which attack his enhanced sentence under ACCA. First, Lightsey argues that his 2000 Florida conviction for sale of cocaine and his 2009 Florida conviction for sale or delivery of cocaine do not qualify as "serious drug offenses" under ACCA because Florida's definition of cocaine at the time of Lightsey's state offenses was broader than the federal definition of cocaine at the time of his federal firearm offense. Second, Lightsey contends that his 1997 Florida conviction for attempted armed robbery does not qualify as a "violent offense" under ACCA's elements clause, following the Supreme Court's decision in *United States v. Taylor*, 596 U.S. 845 (2022). We assume for purposes of this appeal that Lightsey preserved his core issue—that these convictions are not proper ACCA predicates—before the district court. We therefore consider Lightsey's challenges properly preserved, and our review is de novo. *United States v. Jackson* ("*Jackson II*"), 55 F.4th 846, 849–50 (11th Cir. 2022), *aff'd sub nom. Brown v. United States*, 602 U.S. 101 (2024).

ACCA mandates a 15-year minimum sentence for any defendant who possesses a firearm in violation of § 922(g) *and* is an

---

[2] As we explain below, the government agrees with Lightsey's view of at least one issue raised in this appeal. For that reason, a member of this panel appointed Michael D. Doman of Gibbs & Bruns, LLP, as *amicus curiae* to defend the district court's sentence. We thank Mr. Doman for accepting this appointment and providing very capable service to this Court during this appeal.

"armed career criminal," meaning they have 3 prior convictions for "violent felonies" or "serious drug offenses" committed on separate occasions. *See* § 924(e)(1). We apply the categorical approach to determine whether a defendant's prior state conviction is a predicate offense under ACCA. *Jackson II*, 55 F.4th at 850. Under the categorical approach, we look to the statutory definition of the state offense, not the facts of the crime as committed. *Id*. A state conviction qualifies as a "serious drug offense" or "violent felony" only if the state statute of conviction defines the offense in the same way as, or more narrowly than, ACCA's definition. *Id*. In other words, the least culpable conduct prohibited by the state statute must fall within ACCA's definition of the qualifying predicate offenses.

We first address Lightsey's drug crimes, then his attempted armed robbery.

## A. Lightsey's "Serious Drug Offenses"

On appeal, Lightsey argues that the district court erred by finding that his 2000 and 2009 Florida cocaine convictions were serious drug offenses under ACCA. This argument, however, is squarely foreclosed by our binding precedent.

ACCA defines a "serious drug offense," in relevant part, as "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance." § 924(e)(2)(A)(ii). The statute provides that "controlled substances" are defined by the Controlled Substances Act, 21 U.S.C. § 802. *Id*. The Controlled Substances Act, in turn, defines

a "controlled substance" as "a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B [§ 812] of this subchapter." 21 U.S.C. § 802(6). In *Jackson II*, this Court clarified that ACCA's definition incorporates the law in effect at the time of the prior drug conviction—as to both the state statute and the federal drug schedules—and not the law in effect at the time of the subsequent § 922(g) conviction. *Jackson II*, 55 F.4th at 850, 854. And earlier this year, the Supreme Court affirmed *Jackson II*, confirming that "a prior state drug conviction may constitute an ACCA predicate if the drugs on the federal and state schedules matched when the state drug offense was committed." *Brown*, 602 U.S. at 118.

When applying the categorical approach to determine whether a previous conviction qualifies as an ACCA predicate, we must presume that the previous conviction "'rested upon nothing more than the least of the acts criminalized' or the 'least culpable conduct.'" *United States v. Kushmaul*, 984 F.3d 1359, 1364 (11th Cir. 2021) (quoting *Donawa v. U.S. Att'y Gen.*, 735 F.3d 1275, 1280, 1283 (11th Cir. 2013)).

Lightsey proffers that the least culpable conduct under the Florida statute of conviction was possession with intent to sell ioflupane. But he concedes that, at the time of each drug conviction, both Florida law and federal law criminalized manufacturing, distributing, or possessing with intent to distribute ioflupane. That the federal drug schedule was later changed to remove ioflupane is irrelevant to the application of the ACCA enhancement, which is

tethered to the schedules in effect at the time of the underlying drug conviction. *Brown*, 602 U.S. at 118; *Jackson II*, 55 F.4th at 850, 854. The district court, therefore, correctly concluded that Lightsey's 2000 and 2009 drug convictions were "serious drug offenses" under ACCA. *See Brown*, 602 U.S. at 109–10; *Jackson* II, 55 F.4th at 861 (both rejecting this same ioflupane argument).

### B. Lightsey's "Violent Felony"

We turn next to Lightsey's attempted armed robbery conviction, which was his third qualifying ACCA predicate. While Lightsey contends, and the government agrees, that the district court erred in finding that Lightsey's 1997 Florida conviction for attempted armed robbery was a violent felony under ACCA, "[a] court is not bound by the parties' stipulations of law, particularly when those stipulations are erroneous." *King v. United States*, 641 F.2d 253, 258 (5th Cir. Mar. 1981). Indeed, "[i]t is clear that a stipulation of the parties to an action may be ignored by the court if it is a stipulation as to what the law requires." *See United States v. One 1978 Bell Jet Ranger Helicopter, Serial No. 2464, License No. N500RF*, 707 F.2d 461, 462 (11th Cir. 1983).

ACCA defines a "violent felony" as any crime punishable by more than one year in prison and which "has as an element the use, attempted use, or threatened use of physical force against the person of another." § 924(e)(2)(B)(i). This definition comprises the "elements clause." As with serious drug offenses, we apply the categorical approach to determine whether a previous conviction is a "violent felony." *United States v. Sharp*, 21 F.4th 1282, 1285 (11th Cir.

2021).  Under Florida law, robbery is "the taking of money or other property which may be the subject of larceny from the person or custody of another, with intent to either permanently or temporarily deprive the person or the owner of the money or other property, when in the course of the taking there is the use of force, violence, assault, or putting in fear."  Fla. Stat. § 812.13(1).  The Florida Supreme Court has defined the elements of an attempted armed robbery as "(1) the formation of an intent to commit the crime of robbery; (2) the commission of some physical act in furtherance of the robbery; and (3) the use of a [weapon]."  *Franqui v. State*, 699 So. 2d 1312, 1317 (Fla. 1997) (citing Fla. Stat. §§ 777.04(1), 812.13(2)(a)); *accord State v. Tripp*, 642 So. 2d 728, 730 n.2 (Fla. 1994) ("[A]ttempted armed robbery is a felony in which the use of a weapon is an essential element.").

Attempted armed robbery qualifies as a categorical crime of violence under ACCA's elements clause.  *See United States v. Joyner*, 882 F.3d 1369, 1379 (11th Cir. 2018).  This remains so after *Taylor*, in which the Supreme Court opined only on attempted Hobbs Act robbery and said nothing of the crime at issue here.  596 U.S. at 848, 860.

Under our prior-panel precedent rule, *Joyner* "is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting *en banc.*"  *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008).  "For a Supreme Court decision to undermine panel precedent to the point of abrogation, the 'decision must be clearly on

point' and '*clearly contrary*' to the panel precedent." *Edwards v. U.S. Att'y Gen.*, 97 F.4th 725, 743 (11th Cir. 2024) (emphasis in original) (quoting *Garrett v. Univ. of Ala. at Birmingham Bd. of Trs.*, 344 F.3d 1288, 1292 (11th Cir. 2003)). Indeed, if the Supreme Court "'never discussed' our precedent and did not 'otherwise comment[] on' the precise issue before the prior panel, our precedent remains binding." *United States v. Dubois*, 94 F.4th 1284, 1293 (11th Cir. 2024) (alteration in original) (quoting *United States v. Vega-Castillo*, 540 F.3d 1235, 1238 (11th Cir. 2008)). "Even if the reasoning of an intervening high court decision is at odds with a prior appellate court decision, that does not provide the appellate court with a basis for departing from its prior decision." *Vega-Castillo*, 540 F.3d at 1237. Instead, to abrogate our precedent, the Supreme Court (or this Court en banc) must "'demolish' and 'eviscerate'" all the "fundamental props" of the prior-panel precedent. *Dubois*, 94 F.4th at 1293 (quoting *Del Castillo v. Sec'y, Fla. Dep't of Health*, 26 F.4th 1214, 1223 (11th Cir. 2022)). "In addition to being squarely on point, the doctrine of adherence to prior precedent also mandates that the intervening Supreme Court case actually abrogate or directly conflict with, as opposed to merely weaken, the holding of the prior panel." *See United States v. Kaley*, 579 F.3d 1246, 1255 (11th Cir. 2009).

*Taylor* does not speak to attempted armed robbery under Florida law. It does not cite to our *Joyner* decision, nor any of the precedent upon which *Joyner* relied. Instead, *Taylor* holds only that attempted Hobbs Act robbery—a violation of a specific federal statute, 18 U.S.C. § 1951—is not a "crime of violence" under ACCA's elements clause. *See* 596 U.S. at 851; § 924(c)(3)(A). *Joyner*,

on the other hand, holds that attempted armed robbery under Florida Statute § 812.13 is a "violent felony" within the meaning of ACCA's elements clause. *See* 882 F.3d at 1378; § 924(e)(2)(B)(i). It cannot be said, therefore, that *Taylor* is "'clearly on point' and '*clearly contrary*' to the panel precedent." *Edwards*, 97 F.4th at 743 (quoting *Garrett*, 344 F.3d at 1292). In similar cases, we have reached this same conclusion, reasoning that *Taylor's* reach does not extend to other crimes, arising under other statutes. In *United States v. Wiley*, 78 F.4th 1355 (11th Cir. 2023), for example, we considered an appellant's challenge to a § 924(c) conviction arising from a conviction for aiding and abetting a completed Hobbs Act robbery. *Id*. at 1364. Wiley contended that *Taylor* abrogated our prior precedent on that issue—an argument that we rejected, "[b]ecause the Supreme Court's analysis in *Taylor* was limited to attempted Hobbs Act robbery" and therefore could not help Wiley to "overcome our established precedent holding that aiding and abetting completed Hobbs Act robbery is a crime of violence." *Id.*

And, while *Taylor's* reasoning may creep towards that which we applied in *Joyner*, discordant reasoning provides an insufficient basis for departure from our precedent. *See Vega-Castillo*, 540 F.3d at 1237. In any event, we find that the reasoning does not cut all that closely once we push beyond the surface.

First, while *Taylor* and *Joyner* (and this case) all involve "attempt" convictions, the source of law defining the "attempt" is not consistent. *Taylor*, as we know, arose under federal law and thus implicated the version of "attempt" that exists under the federal

common law and the Model Penal Code. 596 U.S. at 851 and *pas-sim*. Florida, however, has codified an "attempt" statute, Florida Statute § 777.04, rendering *Taylor*'s "attempt" analysis inapposite. In particular, the federal "attempt" analysis in *Taylor* requires courts to ask whether the defendant took a "substantial step" to-wards the completed offense. *Id*. at 851. Under Florida law, on the other hand, attempt is characterized more stringently and includes not only "substantial step," but also "proximity," "probable de-sistance," and "equivocality." *Hudson v. State*, 745 So. 2d 997, 1000 n.3 (Fla. Dist. Ct. App. 1999); *see also id*. ("The substantial step ap-proach is authorized by the Model Penal Code. That model act has not been adopted in Florida, and it is doubtful we could utilize that approach in the absence of the model act's statutory language."). While the Court in *Taylor* declined to answer "what exactly consti-tutes a substantial step," 596 U.S. at 851, Florida's courts have coun-seled that attempt requires that "some appreciable fragment of the crime must be committed and it must proceed to the point that the crime would be consummated unless interrupted by a circum-stance independent of the attemptor's will." *State v. Coker*, 452 So. 2d 1135, 1136 (Fla. Dist. Ct. App. 1984). Thus, the rendition of "at-tempt" contemplated in *Taylor* arguably calls for less culpable con-duct than that necessary to sustain an "attempt" conviction under Florida law.

Second, and perhaps more fundamentally, the text of the Hobbs Act statute and the Florida robbery statute are quite differ-ent. While the Florida statute requires the use of force against a person, the broader Hobbs Act statute does not—it also covers the

use of force against property.  *Compare* Fla. Stat. § 812.13 *with* 18 U.S.C. § 1951(b)(1); *see also United States v. Eason*, 953 F.3d 1184, 1192–93 (11th Cir. 2020) (explaining why a case parsing the language of the Florida robbery statute could not control in a categorical analysis of Hobbs Act robbery).

Reasoning, as opposed to holding, "does not provide the appellate court with a basis for departing from its prior decision." *Vega-Castillo*, 540 F.3d at 1237.  And even if it did, the relevant reasoning from *Taylor* does not come nearly close enough to *Joyner* to "'demolish' and 'eviscerate'" all the "fundamental props" of our prior-panel precedent.  *Dubois*, 94 F.4th at 1293 (quoting 26 F.4th at 1223).  Because *Joyner* remains binding in this Circuit, we conclude that the district court did not err in determining that Lightsey's attempted armed robbery conviction was a qualifying ACCA predicate.

### III.    CONCLUSION

For the foregoing reasons, we affirm Lightsey's sentence.

**AFFIRMED.**

20-13682          Wilson, J., Dissenting in Part          1

WILSON, Circuit Judge, Concurring in Part and Dissenting in Part:

The majority concludes our precedent in *United States v. Joyner*, 882 F.3d 1369 (11th Cir. 2018) is not abrogated by the Supreme Court's precedent in *United States* v. *Taylor*, 596 U.S. 845 (2022). I disagree. I would hold that because *Taylor* abrogated *Joyner*, Jimmy Ray Lightsey should not be subject to a sentencing enhancement under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e).

As the majority explains, Lightsey was sentenced to 240 months in prison for various firearm-and drug-related offenses. During sentencing, the district court determined that Lightsey was an armed career criminal under the ACCA due to three prior convictions for a violent felony or serious drug offense. On appeal, Lightsey argues that his conviction for attempted armed robbery is not a violent felony.[1] More specifically, Lightsey asserts that, following *Taylor*, his 1997 conviction for attempted armed robbery is no longer a violent felony under the ACCA.[2]

The ACCA's definition of "violent felony" includes a crime punishable by more than one year's imprisonment that "has as an element the use, attempted use, or threatened use of physical force

---

[1] Lightsey also contends that his cocaine-related convictions are not serious drug offenses. I concur with the majority in its determination that those convictions remain serious drug offenses under our precedents.

[2] Notably, both Lightsey and the government agreed that *Taylor* abrogated *Joyner*. As a result, the court had to appoint amicus curiae counsel to argue that *Joyner* was not abrogated by *Taylor*.

against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). This provision of the ACCA is appropriately known as that subsection's "elements clause." *See, e.g.*, *United States* v. *Sharp*, 21 F.4th 1282, 1285 (11th Cir. 2021). To determine whether a crime is covered by the elements clause, this court employs the categorical approach: we scrutinize the elements of the statute under which the defendant was convicted. *Id.*

Lightsey was convicted of *attempted armed robbery* under Florida's robbery statute. *See* Fla. Stat. § 812.13. That statute defines *robbery* as the intentional "taking of money or other property" from another's "person or custody," with "the use of force, violence, assault, or putting in fear." *Id.* § 812.13(1). An *armed robbery* occurs where, "in the course of committing the robbery the offender carried a weapon." *Id.* § 812.13 (2)(b).[3] Under Florida law, a person commits the offense of criminal attempt if he intends to commit an offense and "does any act toward the commission of such offense but fails in the perpetration or is intercepted or prevented in the execution." *Id.* § 777.04(1).

Interpreting these two statutes, the Supreme Court of Florida identified three elements of attempted armed robbery: "(1) the formation of an intent to commit the crime of robbery; (2) the commission of some physical act in furtherance of the robbery; and (3) the use of a [weapon]." *Franqui* v. *State*, 699 So. 2d 1312, 1317 (Fla. 1997) (citing Fla. Stat. §§ 777.04(1), 812.13(2)(a)). At the time

---

[3] The statute imposes higher penalties if "the offender carried a firearm or other deadly weapon." Fla. Stat. § 812.13(2)(a).

Lightsey was sentenced for his federal firearm offense, Florida attempted armed robbery was "categorially a violent felony under the ACCA" in this circuit under *Joyner*, 882 F.3d at 1379. The panel's holding in *Joyner* "is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting *en banc.*" *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008).

However, a few years after we decided *Joyner*, the Supreme Court issued *Taylor*, which held that attempted Hobbs Act robbery is not a "crime of violence" under the elements clause present in 18 U.S.C. § 924(c)(3)(A). 596 U.S. at 852. In addition, *Taylor* clarified the standard by which to evaluate attempt crimes under the elements clause in 18 U.S.C. § 924(c)(3)(A). *Id.* at 850. The *Taylor* Court explained that the relevant inquiry is whether the felony at issue "*always* requires the government to prove—beyond a reasonable doubt, as an element of its case—the use, attempted use, or threatened use of force." *Id.* (emphasis added).

Using this approach, the Court concluded that attempted Hobbs Act robbery is not a "crime of violence" under 18 U.S.C. § 924(c)(3)(A). *Id.* at 852. Attempted Hobbs Act robbery required the government to prove: "(1) the defendant intended to unlawfully take or obtain personal property by means of actual or threatened force, and (2) he completed a 'substantial step' toward that end." *Id.* at 851.The Court explained whatever proof a "substantial step" toward taking property by force or threat requires, "it does not require the government to prove that the defendant used,

attempted to use, or even threatened to use force against another person or his property." *Id.* This circuit has read *Taylor* to stand for the principle that, "where a crime may be committed by the threatened use of force, an *attempt* to commit that crime–*i.e.*, *an attempt to threaten*–falls outside the elements clause." *Alvarado-Linares* v. *United States*, 44 F.4th 1334, 1346 (11th Cir. 2022) (emphasis added); *see also United States v. Sheely*, No. 22-13500, 2024 WL 4003394, at *5 (11th Cir. Aug. 30, 2024) (holding that Florida attempted armed robbery is not a crime of violence under the Federal Sentencing Guidelines' elements clause, which is nearly identical to the elements clause in the ACCA and is interpreted in the same way).

Notably, *Joyner* and *Taylor* addressed different parts of 18 U.S.C. § 924. *Joyner* addressed the elements clause present in the ACCA at 18 U.S.C. § 924(e)(2)(B). 882 F.3d at 1377. *Taylor* addressed the elements clause present in 18 U.S.C. § 924(c)(3)(A). 596 U.S. at 849. However, the provisions themselves are very close to identical. We have previously held that where the elements clauses of the Federal Sentencing Guidelines and the ACCA are basically identical, the same analysis applies to them. *See United States v. Ochoa*, 941 F.3d 1074, 1107 (11th Cir. 2019). Accordingly, we have used case law interpreting the two provisions interchangeably. *Id.* As the Supreme Court explained in *Taylor*, it has "long understood similarly worded statutes to demand similarly categorical inquiries." 596 U.S. at 850. We must consider *Taylor*'s impact on *Joyner* with this reasoning in mind.

20-13682            Wilson, J., Dissenting in Part            5

For *Taylor* to undermine *Joyner* to the point of abrogation, "the decision must be *clearly on point* and *clearly contrary* to the panel precedent."[4] *Edwards v. U.S. Att'y Gen.*, 97 F.4th 725, 743 (11th Cir. 2024) (internal quotation marks omitted and emphasis added). *Taylor* is clearly on point and clearly contrary to our decision in *Joyner* and has undermined *Joyner* to the point of abrogation. *See Archer*, 531 F.3d at 1352. Just as with attempted Hobbs Act robbery, Florida attempted armed robbery does not always require the government to prove the use, attempted use, or threatened use of force. Rather, that crime may be accomplished by an *attempted threat* of force, which is neither an attempted nor threatened *use* of force. *Cf. United States* v. *Smith*, No. 20-12609, 2023 WL 1860518, at *12–13 (11th Cir. Feb. 9, 2023) (holding that "because criminal attempt to commit armed robbery in Georgia may be committed by an attempt to threaten, it is not categorically a violent felony under the ACCA's elements clause"). Because Florida armed robbery may be committed by the threatened use of force, an attempt to commit the offense falls outside the elements clause. *See Alvarado-Linares*, 44 F.4th at 1346.

I would hold that the district court plainly erred in determining that Lightsey's 1997 conviction for attempted armed robbery

---

[4] The majority cites *United States v. Dubois*, 94 F.4th 1284, 1293 (11th Cir. 2024), for the proposition that if that if the Supreme Court "'never discussed' our precedent and did not 'otherwise comment[] on' the precise issue before the prior panel, our precedent remains binding," and explains that *Taylor* never cited *Joyner*. However, the Supreme Court does not have to directly cite our precedent to abrogate it. *See Dubois*, 94 F.4th at 1293; *Edwards*, 97 F.4th at 743.

6                    Wilson, J., Dissenting in Part                20-13682

was a violent felony under ACCA. Because I would hold Lightsey's prior conviction for attempted armed robbery under Florida law does not qualify as an ACCA-predicate offense, I would vacate and remand for resentencing because Lightsey should not have been subject to the armed career criminal sentencing enhancement.