FOR PUBLICATION

In the

United States Court of Appeals

For the Eleventh Circuit

————————————————

No. 20-13682

————————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

JIMMY RAY LIGHTSEY,

*Defendant-Appellant.*

————————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 3:18-cr-209-MMH-MCR

————————————————

Before LUCK, LAGOA, and WILSON, Circuit Judges.

LAGOA, Circuit Judge:

Upon reconsideration, we GRANT the petition for panel rehearing[1] filed by Jimmy Ray Lightsey.  We VACATE our prior opinion in this case and substitute the following in its place.

\*      \*      \*

Following a jury trial, Jimmy Ray Lightsey was convicted of possessing a firearm as a felon in violation of 18 U.S.C. §§ 922(g) and 924(e); knowingly possessing with intent to distribute cocaine, cocaine base, and marijuana in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), and (b)(1)(D); and possessing a firearm in furtherance of a drug-trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i). At his sentencing, the district court determined that Lightsey was an armed career criminal within the meaning of the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1) ("ACCA"), and enhanced Lightsey's sentence pursuant to that statute.  Lightsey now appeals his sentence of 240 months' imprisonment, contending that the district court plainly erred in finding that his prior convictions qualified as predicate offenses under ACCA.  After careful consideration of the parties' arguments and with the benefit of oral argument, we vacate Lightsey's sentence and remand for resentencing on the ground that Lightsey should not have been subject to the ACCA sentencing enhancement.

---

[1] "A petition for rehearing *en banc* will also be treated as a petition for panel rehearing . . . . [T]he filing of a petition for rehearing *en banc* does not take the appeal out of plenary control of the panel deciding the appeal.  The panel may, on its own, grant rehearing by the panel and may do so without action by the full court." 11th Cir. R. 40; 11th Cir. I.O.P. 3.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  Lightsey's Criminal Conduct

Lightsey was charged in a second superseding indictment with possessing a firearm as a felon in violation of 18 U.S.C. §§ 922(g) and 924(e) (Count One); knowingly possessing with intent to distribute cocaine, cocaine base, and marijuana in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), and (b)(1)(D) (Count Two); and possessing a firearm in furtherance of a drug-trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count Three).  As to Count Two, the government filed an Information to Establish Prior Convictions pursuant to 21 U.S.C. § 851, attaching documents establishing that Lightsey had, in relevant part, a 2000 Florida conviction for the sale of cocaine and a 2009 Florida conviction for the sale or delivery of cocaine, both in violation of Florida Statute § 893.13(1)(a). Lightsey proceeded to trial, and the jury found him guilty of all three counts.

### B.  Lightsey's Sentencing

Before sentencing, a probation officer prepared a presentence investigation report ("PSI") that reported the following facts. On June 24, 2018, a Jacksonville Sheriff's Office detective saw Lightsey driving with improperly tinted windows, then watched him park and get out of the car to gather with a group of people hanging out in a vacant lot.  The detective recognized Lightsey from prior interactions, ran his name through a computer database, and discovered that Lightsey's license was suspended.  The detective waited for backup to arrive and then arrested Lightsey.  During the

arrest, officers saw a large bag of marijuana in plain view on the center console of Lightsey's car and a loaded handgun (which turned out to be stolen) in plain view on the driver's side floorboard. They then searched the car and found 4 more bags of marijuana in the center console, together weighing a total of 46.4 grams. The officers also found in another compartment a pill bottle containing 3.3 grams of cocaine and 0.7 grams of cocaine base packaged for sale. Prior to this arrest, Lightsey had been convicted of multiple felonies, including the 2000 and 2009 Florida convictions for the sale or delivery of cocaine and a 1997 conviction for attempted armed robbery.

The PSI grouped Counts One and Two under U.S.S.G. § 3D1.2(c) and applied the higher offense level applicable to Count One, as required by § 3D1.3(a). The statute governing Count Three required a sixty-month consecutive sentence and thus, pursuant to § 3D1.1(b)(1), Count Three was not grouped with the others. As to Counts One and Two, the probation officer calculated a base offense level of 20 under § 2K2.1(a)(4)(A) because Lightsey violated § 922(g)(1) after sustaining a felony conviction for a controlled substance offense. The PSI then applied a two-level enhancement under § 2K2.1(b)(4)(A) because the firearm Lightsey possessed was stolen. Lightsey's adjusted offense level was, therefore, 22. However, the PSI then increased the offense level to 33 because (a) Lightsey was charged with possession of a firearm by a felon in Count One and (b) he had at least three prior convictions on different occasions for violent felonies or serious drug offenses, rendering him an "armed career criminal" under § 4B1.4(b)(3)(B). Specifically, the

PSI cited as predicate offenses Lightsey's 1997 Florida conviction for attempted armed robbery with a weapon, his 2000 Florida conviction for the sale of cocaine, and his 2009 Florida conviction for the sale or delivery of cocaine, qualifying him for the ACCA enhancement.  Lightsey did not receive any reduction for acceptance of responsibility, resulting in a total offense level of 33.  The probation officer calculated a criminal history score of six, which would typically yield a criminal history category of III.  But because of Lightsey's status as an armed career criminal, the PSI increased his criminal history category to IV pursuant to § 4B1.4(c)(3).

Under § 924(e), Lightsey was subject to a statutory term of imprisonment of fifteen years to life for Count One.  As for Count Two, the statutory maximum term was thirty years.  His guideline range on Counts One and Two was 188 to 235 months.  On Count Three, Lightsey faced a mandatory minimum of five years and a maximum of life, to run consecutively to any other counts.

The PSI also summarized Lightsey's personal history and characteristics.  In particular, the PSI reported that Lightsey's childhood was unstable as he had been raised in foster care and frequently ran away due to physical abuse.  He was homeless at times and his only male role models were other homeless men.  He was in the juvenile justice system from age thirteen until he was sentenced to prison as an adult at age sixteen.  Lightsey has three children, each with a different woman, but he does not have contact with any of them.  Lightsey reported that he has suffered from bipolar disorder and schizophrenia since childhood, and that he

received some mental health counseling and medication between 2014 and 2016. Medical records showed that Lightsey was committed under the Baker Act twice, in July 2014 and October 2016, and that he had attempted suicide at least once in 2016. Nassau County Jail records reflected that Lightsey denied any history of mental health problems during his evaluation there, and he was not prescribed any psychotropic medication during his incarceration. Lightsey reported some illegal drug use in his past, and a urinalysis performed at the time of his initial appearance in November 2018 had negative results. Lightsey dropped out of high school in 11th grade and does not have a GED. He had some scattered employment history as a machine operator, truck driver, warehouse worker, and landscaper. Of all this, the PSI concluded that Lightsey's personal history and characteristics may warrant a sentence outside of the advisory guideline system but did not identify any basis for departure from the guideline range.

Lightsey objected to the PSI, arguing that he was improperly designated as an armed career criminal because (a) his 1997 conviction for attempted armed robbery was not a violent felony and (b) his 2000 and 2009 drug convictions were not "serious drug offenses" as defined in ACCA. The probation officer responded that in *United States v. Fritts*, 841 F.3d 937 (11th Cir. 2016), this Court held that Florida armed robbery under Florida Statute § 812.13 categorically qualified as a "violent felony" under ACCA.[2] Likewise, the

---

[2] The probation officer did not address whether *Fritts* extends to the inchoate crime of "attempt." At the time the PSI was written, however, it was the law

probation officer stated that *Shular v. United States*, 589 U.S. 154 (2020), held that the sale of cocaine and the sale or delivery of cocaine under Florida Statute § 893.13(1)(a) are both "serious drug offenses" under ACCA. Lightsey also filed a sentencing memorandum with mitigating arguments based on his childhood poverty, neglect, abuse, and mental health struggles.

At sentencing, Lightsey renewed his objection to the ACCA enhancement "for the record," but he stated that "[t]he case law does not support [his] objections." He argued that his 1997 conviction for attempted armed robbery was not a qualifying offense for three reasons: it was stale, attempt crimes did not qualify as violent felonies, and it was improper to consider because it was a juvenile conviction. He also maintained that his 2000 Florida cocaine-related conviction was too stale to count as a predicate offense. Lightsey again conceded that he had "no case law to support these objections." The district court disagreed with that characterization, explaining that "it's slightly different than there being no case law to support the objections. The current state of the law is that those objections are all foreclosed." Lightsey agreed. The government, for its part, seconded the probation officer's view that *Shular* held that Lightsey's specific Florida drug convictions were "serious drug offenses" under ACCA. The government added that *Stokeling v. United States*, 586 U.S. 73 (2019), held that Florida armed robbery—the completed crime that Lightsey was convicted of

---

in our Circuit that "an attempt to commit a violent felony under ACCA is also a violent felony." *United States v. St. Hubert* 909 F.3d 335, 352 (11th Cir. 2018).

attempting—was a predicate felony for the ACCA enhancement. The government also noted that Lightsey had been adjudicated as an adult in the 1997 case but explained that, even if he were adjudicated as a juvenile, *United States v. Burge*, 407 F.3d 1183 (11th Cir. 2005), concluded that juvenile offenses may qualify as predicate convictions under ACCA. The district court added that our Circuit's precedent provided that "an attempt to commit a crime of violence is[,] in itself[,] a crime of violence, and so it counts in the same way as the actual accomplishment of the offense." With that, the district court concluded that, "because I believe that those arguments are foreclosed . . . they are noted and preserved for the record in case the law changes, but for current purposes, I will overrule the objection."

The district court then accepted the facts as recounted in the PSI and adopted its sentencing calculations: an offense level of 33, a criminal history category of IV, a guideline range of 188 to 235 months' imprisonment for Counts One and Two, a 60-month mandatory consecutive sentence for Count Three, and terms of supervised release on each Count. Both Lightsey and the government agreed with the district court's recitation of the guidelines.

Regarding the ACCA predicates, the government introduced into evidence the certified copies of Lightsey's prior drug and attempted robbery convictions. Lightsey admitted that each of these convictions had been entered against him and acknowledged that he would not later be able to challenge the existence of those

convictions, though he could still appeal whether they qualified as ACCA predicates.

The government requested a sentence at the low end of the guideline range on Counts One and Two, followed by the five-year mandatory minimum on Count Three. The government explained that its position balanced the need to deter Lightsey and protect the public from future crimes against the mitigating effect of Lightsey's difficult life circumstances. Lightsey reiterated the mitigating arguments from his sentencing memorandum. He focused on his childhood abuse and instability as well as his juvenile drug use. As for his prior convictions he pointed out that two came from his teenage years, and that, with respect to the prior drug convictions, they concerned a total of $70 worth of crack cocaine. Lightsey also stressed that he had "no prior other violence in his past" and pointed out that, in this case, he had very small amounts of cocaine and crack, and a much larger amount of marijuana, implying that the latter is less serious. Lightsey's counsel expressed frustration and acceptance of the reality that "there's nothing I can say that will get anything lower than 20 years here," and asked that the district court impose that minimum sentence.

Lightsey addressed the district court himself, conceding that he "made some very bad mistakes" but expressing despair over his challenging childhood and his need for psychiatric medication, and insisting that he did not deserve twenty years in prison. While he admitted and took responsibility for his drug crimes, Lightsey disputed the validity of his firearm prosecution. The district court

then sentenced Lightsey to 240 months' imprisonment—consisting of concurrent terms of 180 months' imprisonment on each of Counts One and Two and a consecutive term of sixty months' imprisonment on Count Three—and six years of supervised release. In doing so, the district court acknowledged that it "ha[d] no authority to impose anything less than 15 years as to Count One, and ha[d] no authority to impose less than 5 years consecutive as to Count Three."

This appeal timely followed.

## II.    ANALYSIS

Lightsey raises two issues on appeal, both of which attack his enhanced sentence under ACCA.  First, Lightsey argues that his 2000 Florida conviction for the sale of cocaine and his 2009 Florida conviction for the sale or delivery of cocaine do not qualify as "serious drug offenses" under ACCA because Florida's definition of cocaine at the time of Lightsey's state offenses was broader than the federal definition of cocaine at the time of his federal firearm offense.  Second, Lightsey contends that his 1997 Florida conviction for attempted armed robbery with a weapon does not qualify as a "violent offense" under ACCA's elements clause, following the Supreme Court's decision in *United States v. Taylor*, 596 U.S. 845 (2022). We assume for purposes of this appeal that Lightsey preserved his core issue—that these convictions are not proper ACCA predicates—before the district court.  We therefore consider Lightsey's challenges properly preserved, and our review is *de novo*.  *United*

20-13682                Opinion of the Court                11

*States v. Jackson* (*Jackson II*), 55 F.4th 846, 849–50 (11th Cir. 2022), *aff'd sub nom. Brown v. United States*, 602 U.S. 101 (2024).

Under ACCA, any defendant convicted of possessing a firearm in violation of § 922(g) is subject to a mandatory 15-year minimum sentence if he is an "armed career criminal," meaning that he has 3 prior convictions for "violent felonies" or "serious drug offenses" committed on separate occasions. *See* § 924(e)(1). We apply the categorical approach to determine whether a defendant's prior state conviction is a predicate offense under ACCA. *Jackson II*, 55 F.4th at 850. Under the categorical approach, we look to the statutory definition of the state offense, not the facts of the crime as committed. *Id.* A state conviction qualifies as a "serious drug offense" or "violent felony" only if the state statute of conviction defines the offense in the same way as, or more narrowly than, ACCA's definition. *Id.* In other words, the least culpable conduct prohibited by the state statute must fall within ACCA's definition of the qualifying predicate offenses.

We first address Lightsey's drug crimes, then his attempted armed robbery.

### A. Lightsey's "Serious Drug Offenses"

First, Lightsey argues that the district court erred by finding that his 2000 and 2009 Florida cocaine convictions were serious drug offenses under ACCA. This argument, however, is squarely foreclosed by our binding precedent.

ACCA defines a "serious drug offense," in relevant part, as "an offense under State law, involving manufacturing, distributing,

or possessing with intent to manufacture or distribute, a controlled substance." § 924(e)(2)(A)(ii). The statute provides that "controlled substances" are defined by the Controlled Substances Act, 21 U.S.C. § 802. *Id.* The Controlled Substances Act, in turn, defines a "controlled substance" as "a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B [§ 812] of this subchapter." 21 U.S.C. § 802(6). In *Jackson II*, this Court clarified that ACCA's definition incorporates the law in effect at the time of the prior drug conviction—as to both the state statute and the federal drug schedules—and not the law in effect at the time of the subsequent § 922(g) conviction. *Jackson II*, 55 F.4th at 850, 854. In 2024, the Supreme Court affirmed *Jackson II*, confirming that "a prior state drug conviction may constitute an ACCA predicate if the drugs on the federal and state schedules matched when the state drug offense was committed." *Brown*, 602 U.S. at 118.

When applying the categorical approach to determine whether a previous conviction qualifies as an ACCA predicate, we must presume that the previous conviction "'rested upon nothing more than the least of the acts criminalized' or the 'least culpable conduct.'" *United States v. Kushmaul*, 984 F.3d 1359, 1364 (11th Cir. 2021) (quoting *Donawa v. U.S. Att'y Gen.*, 735 F.3d 1275, 1280, 1283 (11th Cir. 2013)).

Lightsey proffers that the least culpable conduct under the Florida statute of conviction was possession with intent to sell ioflupane. But he concedes that, at the time of each drug conviction, both Florida law and federal law criminalized manufacturing,

distributing, or possessing with intent to distribute ioflupane. That the federal drug schedule was later changed to remove ioflupane is irrelevant to the application of the ACCA enhancement, which is tethered to the schedules in effect at the time of the underlying drug conviction. *Brown*, 602 U.S. at 118; *Jackson II*, 55 F.4th at 850, 854. The district court, therefore, correctly concluded that Lightsey's 2000 and 2009 drug convictions were "serious drug offenses" under ACCA. *See Brown*, 602 U.S. at 109–10; *Jackson* II, 55 F.4th at 861 (both rejecting this same ioflupane argument).

### B. Lightsey's "Violent Felony"

We turn next to a more difficult question: whether the district court erred in finding that Lightsey's 1997 Florida conviction for attempted armed robbery, in violation of Fla. Stat. § 812.13(2)(b), was a violent felony and, thus, a valid predicate offense under ACCA. In light of intervening Supreme Court precedent, we conclude that the district court did err.

ACCA defines a "violent felony" as any crime punishable by more than one year in prison and which "has as an element the use, attempted use, or threatened use of physical force against the person of another." § 924(e)(2)(B)(i). This provision is known as ACCA's "elements clause." As with serious drug offenses, we apply the categorical approach to determine whether a previous conviction is a "violent felony." *United States v. Sharp*, 21 F.4th 1282, 1285 (11th Cir. 2021). Under this approach, we examine only the elements of the statute of conviction. *Id.*

In *Taylor*, the Supreme Court held that attempted Hobbs Act robbery does not qualify as a predicate crime of violence under the elements clause of 18 U.S.C. § 924(c).[3]  596 U.S. at 850–52.  The Court first reiterated that, under the categorical approach, the facts of a particular defendant's case are immaterial because the "only relevant question is whether the federal felony at issue always requires the government to prove—beyond a reasonable doubt, as an element of its case—the use, attempted use, or threatened use of force."  *Id*. at 850.  The Court then explained that, to prove attempted Hobbs Act robbery, the government must show that the defendant intended to unlawfully take or obtain personal property by force or threat, and that the defendant completed a "substantial step" toward achieving that end.  *Id*. at 851.  But while the government must show that the defendant took a "substantial step"

_____

[3] 18 U.S.C. § 924(c)(1) provides for a mandatory consecutive sentence for any defendant who uses or carries a firearm during a crime of violence or a drug-trafficking crime.  Section 924(c) defines a "crime of violence" as a felony offense that:

> (A)  has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B)  that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

*Id*. § 924(c)(3)(A), (B).  Section 924(c)(3)(A) is known as § 924(c)'s "elements clause."  *See, e.g.*, *Thompson v. United States*, 924 F.3d 1153, 1155 (11th Cir. 2019).

toward committing robbery, it need not show that the defendant actually used, attempted to use, or even threatened to use force against another person or his property, as required by § 924(c). *Id.* The Court stressed that "an *intention* to take property by force or threat[] . . . is just that, no more." *Id.* (emphasis added). Therefore, *Taylor* held that attempted Hobbs Act robbery is not a crime of violence under § 924(c)'s elements clause. *Id.* at 852.

This case involves § 924(e), not § 924(c). It also involves attempted armed robbery under Florida's robbery statute, rather than attempted Hobbs Act robbery. Still, we think *Taylor*'s reasoning and methodology control.

For one thing, the elements clauses of §§ 924(e) and 924(c) are nearly identical. ACCA's elements clause is also "identical" to the corresponding clause in U.S.S.G. § 4B1.2(a)(1). *See United States v. Eason*, 953 F.3d 1184, 1192 (11th Cir. 2020). This Court has held that, because the elements-clause definition of "crime of violence" under U.S.S.G. § 4B1.2(a) and the elements-clause definition of "violent felony" under ACCA are "virtually identical," we look "to the Supreme Court's and our own decisions applying [ACCA] for guidance in considering whether an offense qualifies as a crime of violence under the Guidelines, and vice versa." *United States v. Ochoa*, 941 F.3d 1074, 1107 (11th Cir. 2019). Given that the elements clauses of §§ 924(e) and 924(c) are also nearly identical, it follows that we may look to the Supreme Court's decisions applying § 924(c) for guidance in determining whether a crime qualifies as a violent felony under ACCA.

For another, in *Alvarado-Linares v. United States*, this Court "read *Taylor* to hold that, where a crime may be committed by the threatened use of force, an attempt to commit that crime—*i.e.*, an attempt to threaten—falls outside the elements clause." 44 F.4th 1334, 1346 (11th Cir. 2022). Because the elements clauses of §§ 924(e) and 924(c) are close to identical, and because this Court has previously interpreted *Taylor* as applying to attempt crimes beyond attempted Hobbs Act robbery, we must now apply *Taylor*'s methodology to the issue at hand: whether attempted armed robbery under Florida law qualifies as a violent felony under ACCA, using the categorical approach.

Under Florida law, robbery is "the taking of money or other property which may be the subject of larceny from the person or custody of another, with intent to either permanently or temporarily deprive the person or the owner of the money or other property, when in the course of the taking there is the use of force, violence, assault, or putting in fear." Fla. Stat. § 812.13(1). It is this latter element of force or threat "that distinguishes the offense of robbery from the offense of theft." *Mahn v. State*, 714 So. 2d 391, 396 (Fla. 1998). Robbery is transformed into armed robbery where, "in the course of committing the robbery[,] the offender carried a weapon[.]" Fla. Stat. § 812.13(2)(b). The Florida Supreme Court has made explicit that armed robbery does not require the use of a weapon. *See State v. Baker*, 452 So. 2d 927, 929 (Fla. 1984) ("[T]he statutory element [of Fla. Stat. § 812.13(2)] which enhances punishment for armed robbery is not the *use* of the deadly weapon, but the mere fact that a deadly weapon was *carried* by the perpetrator.

The victim may never even be aware that a robber is armed, so long as the perpetrator has the weapon in his possession during the offense.") (emphasis in original).

Florida law also provides that anyone "who attempts to commit an offense prohibited by law and in such attempt does any act toward the commission of such offense, but fails in the perpetration or is intercepted or prevented in the execution thereof, commits the offense of criminal attempt[.]" Fla. Stat. § 777.04(1).

Putting all of these statutes together, the Florida Supreme Court has defined the elements of attempted armed robbery as "(1) the formation of an intent to commit the crime of robbery; (2) the commission of some physical act in furtherance of the robbery; and (3) the use of a [weapon]." *Franqui v. State*, 699 So. 2d 1312, 1317 (Fla. 1997) (citing Fla. Stat. §§ 777.04(1), 812.13(2)(a)).

So, is attempted armed robbery under Florida law categorically a violent felony under ACCA's elements clause? We conclude that the answer is no, because it does not "*always* require[ ] the government to prove—beyond a reasonable doubt, as an element of its case—the use, attempted use, or threatened use of force." *Taylor*, 596 U.S. at 850 (emphasis added). As with attempted Hobbs Act robbery, Florida attempted armed robbery can be executed with an attempt to threaten, which is not equivalent to the use, attempted use, or threatened use of force. *See Taylor*, 596 U.S. at 850–52; *Alvarado-Linares*, 44 F.4th at 1346 (holding that an "attempt to threaten" would fall outside the virtually identical elements clause of § 924(c)).

To secure a conviction for attempted armed robbery in Florida, the government can prove that a defendant, carrying a weapon, formed an intention to take money or property by force or threat and took one overt act toward that end. *Franqui*, 699 So. 2d at 1317; Fla. Stat. §§ 777.04(1), 812.13. This burden falls short of requiring the government to prove that the defendant used, attempted to use, or threatened to use force. As the Supreme Court explained in *Taylor*:

> [T]o secure a conviction [for attempted Hobbs Act robbery] the government must show an intention to take property by force or threat, along with a substantial step toward achieving that object. But an intention is just that, no more. And whatever a substantial step requires, it does not require the government to prove that the defendant used, attempted to use, or even threatened to use force against another person or his property. As the Model Penal Code explains with respect to the Hobbs Act's common-law robbery analogue, "there will be cases, appropriately reached by a charge of attempted robbery, where the actor does not actually harm anyone or even threaten harm." ALI, Model Penal Code § 222.1, p. 114 (1980). "If, for example, the defendant is apprehended before he reaches his robbery victim and thus before he has actually engaged in threatening conduct, proof of his purpose to engage in such conduct" can "justify a conviction of attempted robbery" so long as his intention and some other substantial step are present. *Id.*, at 115.

596 U.S. at 851. Applying the Supreme Court's hypothetical here, the government could lawfully convict a defendant of Florida attempted armed robbery where the defendant came up with a plan to rob a store by threat of force, then bought a ski mask and staked out the store for a swift getaway, but was ultimately arrested, while carrying a weapon, just after entering the store. This hypothetical illustrates that a conviction for attempted armed robbery in Florida can be secured based on a defendant's attempt to threaten to use force, which falls outside the elements clause. *Alvarado-Linares*, 44 F.4th at 1346.

Because no element of Florida attempted armed robbery requires proof that the defendant used, attempted to use, or even threatened to use force, it does not satisfy ACCA's elements clause. Therefore, a conviction for attempted armed robbery under Florida law is not a valid predicate offense under ACCA.

We recognize that, in *United States v. Joyner*, 882 F.3d 1369 (11th Cir. 2018)—which was the law of our Circuit when Lightsey was sentenced for his federal firearm offense—this Court held that "Florida attempted robbery is categorically a violent felony under the ACCA." *Id*. at 1379. We now hold that *Joyner* has been abrogated by the Supreme Court's decision in *Taylor*.

Under this Court's prior-panel-precedent rule, "a prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this [C]ourt sitting *en banc*." *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008). "To constitute an

'overruling' for the purposes of th[e] prior panel precedent rule, the Supreme Court decision 'must be clearly on point.'" *United States v. Kaley*, 579 F.3d 1246, 1255 (11th Cir. 2009) (quoting *Garrett v. Univ. of Ala. at Birmingham Bd. of Trs.*, 344 F.3d 1288, 1292 (11th Cir. 2003)). "In addition to being squarely on point, the doctrine of adherence to prior precedent also mandates that the intervening Supreme Court case actually abrogate or directly conflict with, as opposed to merely weaken, the holding of the prior panel." *Id.*

*Taylor* is clearly on point and directly conflicts with *Joyner*. In reaching the conclusion that Florida attempted robbery is a violent felony under ACCA, *Joyner* relied almost entirely on *United States v. Lockley*, 632 F.3d 1238 (11th Cir. 2011), a Guidelines case, and several pre-*Taylor* cases dealing with completed (rather than attempted) Florida armed robbery. *See Joyner*, 882 F.3d at 1379 (citing *Lockley*, 632 F.3d at 1240, 1242–43, 1245; *United States v. Seabrooks*, 839 F.3d 1326, 1341 (11th Cir. 2016); and *United States v. Dowd*, 451 F.3d 1244, 1255 (11th Cir. 2006)). As *Joyner* summarized, *Seabrooks* and *Dowd* held that armed robbery under Florida law is a violent felony under ACCA. *Lockley* further reasoned that a conviction for attempted robbery qualifies as a predicate offense for the Guidelines' version of the career-offender enhancement *because* completed "robbery under [Fla. Stat. § 812.13(1)] requires either the use of force, violence, a threat of imminent force or violence coupled with apparent ability, or some act that puts the victim in fear of death or great bodily harm." 632 F.3d at 1245. In relying on these cases, *Joyner* adopted analysis that the Supreme Court has now squarely rejected.

Contrary to our pre-*Taylor* precedent, a completed crime's qualification as a violent felony no longer shows that an attempt to commit that same crime is also a violent felony.  In *Taylor*, the government argued that because completed Hobbs Act robbery is a crime of violence, attempted Hobbs Act robbery must be a crime of violence, too.  596 U.S. at 853.  The Supreme Court rejected this reasoning, which it referred to as a "syllogism rest[ing] on a false premise."  *Id*.  The Court explained:

> The elements clause does not ask whether the defendant committed a crime of violence *or* attempted to commit one.  It asks whether the defendant did commit a crime of violence—and it proceeds to define a crime of violence as a felony that includes as an element the use, attempted use, or threatened use of force.  If Congress had wanted the elements clause to do the kind of work the government supposes, it could have easily said so.  For example, it might have swept in those federal crimes that require as an element "the use or threatened use of force" *and* those "that constitute an attempt to commit an offense that has such an element."  But that simply is not the law we have.

*Id*.  *Joyner* relies on *Lockley* and rests in part on the same syllogistic reasoning that, because completed armed robbery is a violent felony, attempted armed robbery must be a violent felony, too.  As

such, we are compelled to conclude that *Joyner* directly conflicts with *Taylor*.[4]

More broadly, *Taylor* abrogates *Joyner* because *Taylor* "clearly set forth a new standard to evaluate which crimes constitute 'violent felonies' and 'crimes of violence,'" *Archer*, 531 F.3d at 1352, which means that the more summary approach used in *Joyner* has been undermined to the point of abrogation. That *Taylor* analyzed a different crime than *Joyner* did is of no consequence. *See Archer*, 531 F.3d at 1352 (holding that the Supreme Court's decision in *Begay*[5]—an ACCA case—abrogated our decision in *Gilbert*[6]—a Guidelines case—because *Begay* set forth a new method by which to evaluate which crimes constitute "violent felonies" and "crimes of

---

[4] *Lockley* also direct conflicts with our own precedent. As an alternative ruling in *Lockley*, this Court held that, "because the commentary [to the Sentencing Guidelines] explicitly states that the attempt to commit a 'crime of violence' is itself a 'crime of violence,' Lockley's attempted robbery conviction categorically qualifies under the elements clause as a predicate for the career offender enhancement." 632 F.3d at 1245. This Court, sitting *en banc*, has rejected this approach. *See United States v. Dupree*, 57 F.4th 1269, 1274 (11th Cir. 2023) (en banc) (holding that a court may not defer to the Guidelines commentary or application notes unless the text of the Guidelines is "genuinely ambiguous"). Without ambiguity, the text of U.S.S.G. § 4B1.2(a) does not include attempted robbery or attempted armed robbery in its enumerated list of crimes. So, *Lockley*'s invocation of the commentary conflicts with *Dupree*.

[5] *Begay v. United States*, 553 U.S. 137 (2008).

[6] *United States v. Gilbert*, 138 F.3d 1371 (11th Cir. 1998).

violence," even though *Begay* "addressed a different crime" than *Gilbert*).

Here, *Taylor* gave us a new method by which to determine which attempt crimes fall within the elements clause of § 924(c), which, as we've said, is almost identical to the elements clause of § 924(e). This method focuses exclusively on whether any element of an attempt crime requires the government to prove that the defendant used, attempted to use, or threatened to use force. *Joyner* did not examine each of the elements of Florida attempted armed robbery and ask the relevant question: whether that crime *always* requires the government to prove—beyond a reasonable doubt—the use, attempted use, or threatened use of force. Therefore, *Taylor*'s rule is clearly on point and undermines the holding of *Joyner* to the point of abrogation.

\*     \*     \*

Lightsey's conviction for Florida attempted armed robbery served as one of his three predicate offenses at sentencing. Because we are compelled to conclude that attempted armed robbery under Florida law does not qualify categorically as a violent felony, it is not a valid predicate offense under ACCA. Therefore, Lightsey should not have been sentenced with the ACCA enhancement.

## III.     CONCLUSION

For all the reasons stated, we vacate Lightsey's sentence and remand for resentencing without the ACCA enhancement.

**VACATED AND REMANDED FOR RESENTENCING.**

20-13682                   Luck, J., dissenting                        1

Luck, Circuit Judge, dissenting:

Jimmy Ray Lightsey argues that the district court erred in applying the Armed Career Criminal Act to enhance his sentence for possessing a firearm as a felony because one of his three previous Florida convictions—the one for attempted armed robbery—was not a qualifying violent felony under the Act. At his sentencing hearing, Lightsey conceded that his argument was foreclosed by binding precedent. He was right to do so. In *United States v. Joyner*, 882 F.3d 1369 (11th Cir. 2018), we held that Florida attempted robbery "is categorically a violent felony under" the Act. *Id.* at 1379. That should have been the end of it for Lightsey, but it's not the end because the majority opinion concludes that (1) our prior precedent (*Joyner*) has been abrogated by the intervening Supreme Court opinion in *United States v. Taylor*, 596 U.S. 845 (2022), and, (2) applying the categorial approach from scratch, Florida attempted armed robbery is not a violent felony under the Act. I respectfully dissent because the majority opinion is wrong twice over. It is wrong in how it applies the intervening Supreme Court opinion exception to the prior panel precedent rule. And it is wrong that under the categorial approach Florida attempted armed robbery is not a violent felony under the Act.[1]

---

[1] I'm indebted to amicus counsel, Michael D. Doman, for his brief in support of the district court's sentence. Mr. Doman's pro bono service to the court is in the best traditions of our profession.

## I.

Starting with the "prior panel precedent rule, we are bound to follow a prior panel's holding unless and until it is overruled or undermined to the point of abrogation by an opinion of the Supreme Court or of this [c]ourt sitting en banc." *United States v. Gillis*, 938 F.3d 1181, 1198 (11th Cir. 2019). The majority relies on the Supreme Court's intervening opinion in *Taylor* to sidestep our prior precedent in *Joyner*.

The intervening Supreme Court opinion exception to the prior panel precedent rule has two requirements. First, "[t]o constitute an 'overruling' for the purposes of th[e] prior panel precedent rule, the Supreme Court decision 'must be clearly on point.'" *United States v. Kaley*, 579 F.3d 1246, 1255 (11th Cir. 2009) (quoting *Garrett v. Univ. of Ala. at Birmingham Bd. of Trs.*, 344 F.3d 1288, 1292 (11th Cir. 2003)). Second, "[i]n addition to being squarely on point, the doctrine of adherence to prior precedent also mandates that the intervening Supreme Court case actually abrogate or directly conflict with, as opposed to merely weaken, the holding of the prior panel." *Id.*

*Taylor* meets neither requirement. It is not clearly on point. And it does not directly conflict with *Joyner*'s holding that Florida attempted armed robbery is categorically a violent felony under the Act. (No one contends that *Taylor* actually abrogated *Joyner*.) *Taylor* did not involve the Act, Florida robbery, or the state's attempt statute.

<u>Taylor did not involve the Act.</u>  In *Taylor*, the defendant pleaded guilty to using a firearm in connection with a crime of violence, in violation of 18 U.S.C. section 924(c).  The Supreme Court's holding in *Taylor* was that attempted Hobbs Act robbery was not a crime of violence under section 924(c).  *Taylor* had nothing to do with the Act because the defendant in that case was not convicted of possessing a firearm as a felon.  *See* 596 U.S. at 848 (Framing the issues as, "Does attempted Hobbs Act robbery qualify as a 'crime of violence' under 18 U.S.C. [section] 924(c)(3)(A)?").

*Joyner*, in contrast, applied the Act's elements clause to Florida attempted robbery.  882 F.3d at 1377–79.  The majority opinion says that section 924(c) and the Act are "nearly identical," but there are critical differences between the two federal firearm mandatory-minimum statutes.  First, section 924(c) is a substantive criminal offense, while the Act is a sentence enhancement.  *See United States v. Davis*, 588 U.S. 445, 473 (2019) (Kavanaugh, J., dissenting) ("Section 924(c) is a substantive criminal offense, not a sentence enhancement.").  Second, section 924(c)'s text focuses on the present prosecution by looking to the crime of violence the defendant committed "during and in relation to" or "in furtherance of" his possession of a firearm, 18 U.S.C. § 924(c)(1)(A), while the Act focuses on the past by looking to the defendant's "previous convictions" unconnected from his firearm possession, *id.* § 924(e)(1).  Third, section 924(c)'s elements clause is broader than the Act's because it applies to physical force (whether used, attempted, or threatened) against "the person or property of another," *id.* § 924(c)(3)(A), while the Act's elements clause doesn't apply to physical force

against property, *see id.* § 924(e)(2)(B)(i).   Whatever *Taylor* said
about section 924(c), it is not directly on point with *Joyner* and its
application of the Act's sentencing enhancement.

<u>*Taylor* did not involve Florida robbery.</u>  The underlying fel-
ony in *Taylor* was an attempt to commit a Hobbs Act robbery.  596
U.S. at 848.  A Hobbs Act robbery is a federal crime that requires
the defendant (1) to knowingly acquire someone else's personal
property; (2) take the property against the victim's will, by using
actual or threatened force, or violence, or causing the victim to fear
harm, either immediately or in the future; and (3) obstruct, delay,
or affect interstate commerce.  *See* 18 U.S.C. § 1951(a); Eleventh
Circuit Pattern Jury Instructions (Criminal) No. O70.3 (Sept. 2025).

*Joyner*, on the other hand, analyzed a different robbery stat-
ute, from a different sovereign, with different elements.  The *Joyner*
defendant had a previous Florida state conviction for attempting to
commit a robbery.  "Florida law defines robbery as 'the taking of
money or other property . . . from the person or custody of an-
other, . . . when in the course of the taking there is the use of force,
violence, assault, or putting in fear."  *Stokeling v. United States*, 586
U.S. 73, 85–86 (2019) (omissions in original) (quoting Fla. Stat.
§ 812.13(1)).  "The Florida Supreme Court has made clear that this
statute requires 'resistance by the victim that is overcome by the
physical force of the offender.'"  *Id.* at 86 (quoting *Robinson v. State*,
692 So. 2d 883, 886 (1997)).

There are two key distinctions between Florida robbery and Hobbs Act robbery. First, Florida robbery requires that the defendant overcome the victim's resistance through physical force as he takes the victim's property, while Hobbs Act robbery does not require physical force—threatening to use force is enough. Second, "the Florida robbery statute, like most state robbery statutes, requires the use of force against a person." *United States v. Eason*, 953 F.3d 1184, 1192 (11th Cir. 2020). "But the Hobbs Act robbery statute, by its express terms, is broader." *Id.* It includes not only threats against a person, but also threats "against property." *Id.* at 1192–93. Whatever *Taylor* said about an underlying felony involving Hobbs Act robbery, it is not directly on point and does not conflict with *Joyner* where the underlying felony involved Florida robbery.

<u>*Taylor* did not involve Florida's attempt statute.</u> *Taylor* applied federal attempt law to section 924(c)'s elements clause. Under federal law, the *Taylor* Court explained, attempt requires the defendant to "complete[] a 'substantial step' toward" his "inten[t] to" commit a federal crime. *See* 596 U.S. at 851 (quoting *United States v. Resendiz-Ponce*, 549 U.S. 102, 107 (2007)). Precisely defining a substantial step was "beyond the scope of" *Taylor*, but the Court turned to the Model Penal Code for guidance. *Id.* Under the Model Penal Code, *Taylor* explained, "there will be cases, appropriately reached by a charge of attempted robbery, where the actor does not actually harm anyone or even threaten harm." *Id.* (quoting Am. Law Institute, Model Penal Code § 222.1, at 114 (1980)).

*Joyner*, unlike *Taylor*, applied Florida's separate attempt statute to the Act's elements clause. *See* 882 F.3d at 1379. Under Florida law, attempt requires "an overt act" that "reach[es] far enough toward accomplishing the desired result to amount to commencement of the consummation of the crime." *State v. Coker*, 452 So. 2d 1135, 1136 (Fla. Dist. Ct. App. 1984). For a defendant to be guilty of an attempt crime, "[t]here must be some appreciable fragment of the crime committed and it must be in such progress that it would be consummated unless interrupted by circumstances independent of the will of the attempter." *Robinson v. State*, 263 So. 2d 595, 597 (Fla. Dist. Ct. App. 1972). Critically, Florida has not adopted the "substantial step approach . . . authorized by the Model Penal Code." *Hudson v. State*, 745 So. 2d 997, 1000 n.3 (Fla. Dist. Ct. App. 1999). "That model act has not been adopted in Florida, and it is doubtful we could utilize that approach in the absence of the model act's statutory language." *Id.*

Given the differences between section 924(c) and the Act, Hobbs Act robbery and Florida robbery, and federal attempt law and Florida's attempt statute, *Taylor* is not squarely on point and does not directly conflict with *Joyner*'s holding that Florida attempted robbery is categorically a violent felony under the Act. "[T]he Supreme Court's analysis in *Taylor* was limited to attempted Hobbs Act robbery . . . ." *United States v. Wiley*, 78 F.4th 1355, 1364 (11th Cir. 2023). "If the Supreme Court 'never discussed' our precedent and did not 'otherwise comment[] on' the precise issue before the prior panel, our precedent remains binding." *United States*

*v. Dubois*, 139 F.4th 887, 892–93 (11th Cir. 2025) (alteration in original) (quoting *United States v. Vega-Castillo*, 540 F.3d 1235, 1238–39 (11th Cir. 2008)).  Because *Taylor* never discussed *Joyner* and involved a different firearm mandatory-minimum statute, a different underlying felony, and a different attempt law, it did not comment on the precise issue we had in *Joyner*.  For that reason, *Joyner* remains binding.

The majority opinion waves away these differences because, it explains, we can "look to the Supreme Court's decisions applying" section 924(c) "for guidance in determining whether a crime qualifies as a violent felony" under the Act.  But the majority opinion is not reading *Taylor*'s section 924(c) holding for guidance on how to apply the Act to Florida attempted armed robbery.  It is using *Taylor* to ignore *Joyner*.  That's not guidance.  It's creative destruction.

*      *      *      *

The majority opinion gives one other reason for why *Taylor* overruled *Joyner*.  Relying on *United States v. Archer*, 531 F.3d 1347 (11th Cir. 2008), the majority opinion says that because *Taylor* "clearly set forth a new standard to evaluate which crimes constitute 'violent felonies' and 'crimes of violence,'" *id.* at 1352, *Joyner* has been undermined to the point of abrogation.

But, unlike *Begay v. United States*, 553 U.S. 137 (2008), *abrogated in part by Johnson v. United States*, 576 U.S. 591 (2015)—which set the new standard *Archer* was talking about—*Taylor* did not set forth a new standard to evaluate which crimes constitute violent

felonies. Instead, the *Taylor* Court applied the settled categorial approach to a new statute. As *Taylor* explained, the parties "agree[d] on how [it] should go about deciding" the case. 596 U.S. at 850. "To determine whether a federal felony may serve as a predicate for a conviction and sentence under the elements clause, they say, we must apply a 'categorial approach.'" *Id.* And the *Taylor* Court agreed that the well-worn categorial approach was how it must evaluate whether attempted Hobbs Act robbery was a crime of violence under section 924(c)'s elements clause. "The only relevant question is whether the federal felony at issue always requires the government to prove—beyond a reasonable doubt, as an element of its case—the use, attempted use, or threated use of force." *Id.* The Court "long understood similarly worded statutes to demand similarly categorical inquires." *Id.* So have we. *Taylor* didn't change anything about how we and the Supreme Court have applied the categorical approach.

This is far different from the new standard set out in *Begay* (and discussed in *Archer*). In *Begay*, the Supreme Court adopted a new "interpretive approach" for applying the Act's enumerated crimes clause to the now-unconstitutionally-vague residual clause. 553 U.S. at 143. The enumerated crimes clause, *Begay* said, should be read "as limiting the crimes" that the residual clause "covers to crimes that are roughly similar, in kind as well as in degree of risk posed." *Id.* This new interpretative approach was different than how we and the Supreme Court had read and applied the residual clause before *Begay*. *See id.* at 150 (Scalia, J., concurring) ("Today the Court devises a different way to give concrete meaning to the

residual clause."). Because *Begay* adopted a "new standard to eval-
uate which crimes constitute 'violent felonies,'" *Archer* explained
that pre-*Begay* precedent had been "undermined" and "abrogated."
531 F.3d at 1352.

But *Taylor*, unlike *Begay*, didn't adopt a new standard to
evaluate which crimes constitute violent felonies. It did not devise
a different way to give concrete meaning to the elements clause.
*Taylor*, instead, applied the long understood categorial inquiry to a
new statute. Because *Taylor* did not set forth a new standard, there
is no basis under *Archer* to undermine or abrogate our pre-*Taylor*
precedent.

*Somers v. United States*, and not *Archer*, is the model for how
our prior panel precedent rule should work where there's an inter-
vening Supreme Court opinion applying the elements clause to a
different sovereign's felony statute. In *Turner v. Warden Coleman
FCI*, 709 F.3d 1328 (11th Cir. 2013), *abrogated on other grounds by
Johnson*, 576 U.S. 591, we held that a Florida aggravated assault con-
viction was a violent felony under the Act's elements clause. *Id.* at
1339. In *Borden v. United States*, 593 U.S. 420 (2021), the Supreme
Court held that a previous Tennessee conviction for aggravated as-
sault was not a violent felony under the elements clause because
the Tennessee statute only required recklessness as the mental
state to commit the offense. *Id.* at 445 (plurality opinion); *id.* at 446
(Thomas, J., concurring).

*Somers*, which followed *Borden*, addressed the question
whether the intervening Supreme Court opinion applying the Act's

elements clause to the Tennessee aggravated assault statute abrogated our prior precedent (*Turner*) applying the Act's elements clause to Florida's aggravated assault statute. *See Somers v. United States*, 15 F.4th 1049, 1051 (11th Cir. 2021), *certified question answered*, 355 So. 3d 887 (Fla. 2022). In answering the question, we did not, as the majority opinion does here, find that *Turner* had been abrogated by *Borden* because both previous convictions were for aggravated assault. We did not take it for granted that Tennessee and Florida had the same statutes. Instead, we explained that we had to compare the elements of the two sovereigns' statutes to see if Florida aggravated assault had the same flaw as the Tennessee statute. *See id.* at 1054–56. So we asked the Florida Supreme Court to tell us "the mens rea required to prove" aggravated assault under that state's statute. *Id.* at 1056.

When the Florida Supreme Court answered that "aggravated assault under Florida law requires a mens rea of at least knowing conduct," we reaffirmed, as we held in *Turner*, that "aggravated assault under Florida law categorically qualifies as a 'violent felony' under [the Act's] elements clause." *Somers v. United States*, 66 F.4th 890, 892, 896 (11th Cir. 2023). Because the Tennessee aggravated assault statute had different elements than the Florida aggravated assault statute, the intervening Supreme Court decision in *Borden* was not clearly on point and did not directly conflict with our prior precedent.

We should run the same analysis here. *Taylor* applied the long understood categorial approach to attempted Hobbs Act robbery. But as with the Tennessee and Florida aggravated assault statutes in *Somers*, the elements of attempted Hobbs Act robbery under federal law are not the same as the elements of Florida attempted armed robbery. "[T]o win a case for attempted Hobbs Act robbery the government must prove two things: (1) The defendant intended to unlawfully take or obtain personal property by means of actual or threatened force, and (2) he completed a 'substantial step' toward that end." *Taylor*, 596 U.S. at 851 (quoting *Resendiz-Ponce*, 549 U.S. at 107).

Florida attempted armed robbery has different elements. "In order to prove [Florida] attempted armed robbery, the [s]tate must show: (1) the formation of an intent to commit the crime of robbery; (2) the commission of some physical act in furtherance of the robbery; and (3) the use of a firearm." *Franqui v. State*, 699 So. 2d 1312, 1317 (Fla. 1997). Compared side-by-side, attempted Hobbs Act robbery does not require the commission of a physical act in furtherance of the robbery, while attempted armed robbery does. And attempted Hobbs Act robbery does not require the use of a firearm during the commission of the felony, while Florida attempted armed robbery does. *See id.*

With different elements, a different attempt framework, and applying a different firearm-mandatory-minimum statute, *Taylor* may have something to say about whether Florida attempted armed robbery is a violent felony under the Act. But it is not clearly

on point and it does not conflict with *Joyner*.  Without an on-point intervening Supreme Court opinion, we are bound by *Joyner*.

## II.

Even if we were not bound by prior precedent, the majority opinion is wrong that Florida attempted armed robbery is not categorically a violent felony under the Act.  It is.

Under the Act's elements clause, a previous conviction is categorically a violent felony where it is a "crime punishable by imprisonment for a term exceeding one year . . . that . . . has as an element the use, attempted use, or threatened use of physical force against the person of another."  18 U.S.C. § 924(e)(2)(B)(i).  Florida attempted armed robbery has as an element the use, attempted use, or threatened use of physical force.  It requires "the commission of some physical act in furtherance of the robbery" and "the use of a firearm" during the commission of the felony.  *Franqui*, 699 So. 2d at 1317.

These elements are clear enough, but *Franqui*—the Florida Supreme Court decision the majority opinion uses to define the elements of attempted armed robbery—shows how the physical-act and use-of-a-firearm elements work in Florida.  There, three men in the check cashing business had a routine where every Friday they went to the local bank to withdraw money.  *Id.* at 1315.  A robbery crew learned about the Friday bank trips and planned over three months to rob the check cashers.  *Id.* at 1316.  As part of the plan, the crew stole two sports utility vehicles.  *Id.*  One Friday, as the check cashers left the bank with the withdrawn money and

headed in their car back to their business, the crew boxed in the check cashers with one stolen vehicle parked in front of the check cashers' car and the other stolen vehicle parked in the back. *Id.* at 1315. Two men in the robbery crew exited the vehicle parked in front of the check cashers' car and started shooting at the check cashers. *Id.* at 1315–16. The check cashers shot back from the inside of their car and the robbery crew fled but not before one of the check cashers was killed. *Id.* at 1316.

*Franqui* relied on an earlier Florida decision, *Cooper v. Wainright*, 308 So. 2d 182 (Fla. Dist. Ct. App. 1975), to establish physical force and use of a firearm as elements of Florida attempted armed robbery. Here's what happened in *Cooper*:

> [The defendant] had been negotiating with . . . several men (who unknown to [the defendant] were police officers acting in an undercover capacity) for the delivery of a very large quantity of marijuana. As the negotiations progressed, [the defendant] agreed to supply 700 pounds of marijuana. Payment of $56,000 cash was to be made upon receipt of the marijuana. Prior to the time set for closing of the transaction, the undercover officers displayed to [the defendant] large sums of money as evidence of their serious intentions to do business. [The defendant] claimed to be able to deliver the marijuana. A rendezvous was arranged for the early morning hours of December 4, 1971. [The defendant] met the four undercover officers for

the apparent purpose of delivering the 700 pounds of marijuana in exchange for the $56,000 cash. In fact, [the defendant] had no marijuana. After all the participants had assembled, [the defendant] told the undercover officers to follow him to another location so they could get the marijuana. When they arrived, one of the undercover officers walked over to the rear of a van to inspect the marijuana. He started to open the rear door and observed two men in the van armed with shotguns. At this point in time, [the defendant] got out of the driver's side of his car, pointed a pistol at one of the undercover officers and told him to 'freeze'. The officer ducked, drew his pistol, identified himself as a police officer, and fired one shot at [the defendant]. The officers were ultimately able to disarm, arrest and take into custody the [defendant] and the other persons present who were not police officers. In addition to the [defendant] and the two men with shotguns in the back of the van, the driver of the van was also armed.

*Id.* at 184.

In short, the *Franqui* crew shot at the check cashers. And the *Cooper* defendant put his gun to the undercover officer's head and told him to freeze. That's the kind of physical force and use of a firearm needed to commit attempted armed robbery in Florida.

The majority opinion reaches the conclusion that Florida attempted armed robbery is not a violent felony by making four errors along the way.  First, citing *Franqui*, the majority opinion says that to "secure a conviction for attempted armed robbery in Florida," the state need only "prove that a defendant . . . carr[ied] a weapon."[2]  But that's not what *Franqui* says.  *Franqui* was clear that "to prove attempted armed robbery," the state "must show . . . the use of a firearm."  699 So. 2d at 1317.  And *Franqui* was also clear what "use" meant.  The firearm had to be "unlawfully used . . . during the commission of a felony."  *Id.*  In *Franqui*, the firearm was used to shoot the victims.  In *Cooper*, the firearm was used to point at the victim's head and tell him to freeze while a truck filled with armed men waited outside to rip off the victim's cash.  Either way, the firearm cannot merely be passively carried during the commission of the felony.  It had to be "used."

Second, the majority opinion concludes that "Florida attempted armed robbery can be executed with an attempt to threaten, which is not equivalent to the use, attempted use, or threatened use of force."  But attempted armed robbery in Florida requires more than an attempt to threaten.  It requires a "physical

---

[2]  The majority opinion also relies on *State v. Baker*, 452 So. 2d 927 (Fla. 1984). But *Baker* was an armed robbery case.  *Id.* at 928 ("Baker and an accomplice were arrested after an armed robbery.").  The *Franqui* defendant committed a different crime—attempted armed robbery.  *Franqui*, 699 So. 2d at 1317.  The elements for the two crimes are not the same.  (If they were the same, this would be an easy case.  In *Stokeling*, the Supreme Court held that Florida robbery was a violent felony under the Act.  586 U.S. at 75.).

act" to "accomplish the commission" of the crime and it requires an unlawful use of a firearm "during the commission of a felony." *Id.* Neither is an attempt to threaten. These elements require the use, attempted use, or threatened use of force. And we know from *Franqui* and *Cooper* how these elements play out under Florida law. They require a physical act against the victim in the process of taking the victim's property and using a firearm in the commission of the act.

Third, the majority opinion relies on *Taylor*'s discussion of the Model Penal Code and the substantial step approach to define attempt crimes in Florida. But, as I already explained, Florida has not adopted the "substantial step approach . . . authorized by the Model Penal Code." *Hudson*, 745 So. 2d at 1000 n.3. "That model act has not been adopted in Florida, and it is doubtful we could utilize that approach in the absence of the model act's statutory language." *Id.* The majority opinion utilizes an approach that Florida has not adopted.[3]

---

[3] For the same reason, *Alvarado-Linares v. United States*, 44 F.4th 1334 (11th Cir. 2022)'s discussion of attempt crimes is not helpful here. *Taylor* and *Alvarado-Linares* involved attempts to commit federal crimes, which attempts required no more than an intention to do something and a substantial step towards doing it. Here, though, Florida attempted armed robbery requires more than an intention and a substantial step. It requires a physical act in furtherance of the commission of the crime and use a firearm during the commission of the felony. Both elements are far more than is required under the Model Penal Code.

Fourth, the majority opinion uses a hypothetical to show that "attempted armed robbery in Florida can be secured based on a defendant's attempt to threaten to use force, which falls outside the elements clause." But, as the Supreme Court explained in *Taylor*, we don't use hypotheticals when asking, as we must do here, whether a reasonable probability exists that the state would apply its statute to conduct that falls outside the elements clause. *See* 596 U.S. at 858. Rather, we "look[] to state decisional law." *Id.* The Act's elements clause requires that we "make a judgment about the meaning of a state statute." *Id.* at 859. "Appreciating the respect due state courts as final arbiters of state law in our federal system," "it ma[kes] sense to consult how a state court would interpret its own [s]tate's laws." *Id.* That's why it was fine in *Taylor* to use a hypothetical because "no such federalism concern[s were] in play" in analyzing whether attempted Hobbs Act robbery—a federal offense—met the elements clause. *Id.* Here, however, because there are federalism concerns at play in analyzing whether Florida attempted armed robbery is a violent felony, we must turn to state decision law like *Franqui* and *Cooper* instead of hypos.

In any event, even if we could use hypotheticals, the one in the majority opinion doesn't work because it is not clear that the culprit in the hypo committed an attempted armed robbery in Florida. In the majority opinion's hypo, a man "came up with a plan to rob a store by threat of force, then bought a ski mask and staked out the store for a swift getaway, but was ultimately arrested, while carrying a weapon, just after entering the store." But Florida attempted armed robbery requires a physical act in furtherance of the

robbery and use of a firearm during the commission of the felony. The majority opinion's man-with-a-plan did neither. While, under the hypo, "[t]here is little question the government could win a lawful conviction against [the man] for attempted Hobbs Act robbery," *id.* at 852, there are big questions whether the state could win a lawful conviction for attempted armed robbery under Florida law.

*   *   *   *

Echoing *Taylor*, the majority opinion warns it is a mistake to presume that just because a completed crime qualifies as a violent felony, "an attempt to commit that same crime is also a violent felony." But, in issuing that warning, the majority opinion makes the opposite mistake. It presumes that just because a completed crime qualifies as a violent felony, an attempt to commit that same crime will not be a violent felony. Both presumptions are wrong.

The elements clause "asks whether the defendant did commit a crime of violence—and it proceeds to define a crime of violence as a felony that includes as an element the use, attempted use, or threatened use of force." *Taylor*, 596 U.S. at 853 (emphasis omitted). Here, looking at Florida law, as we must, attempted armed robbery includes as an element the use, attempted use, or threatened use of force. Because it does, it's a violent felony under the Act's elements clause.